```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                  DIVISION OF ST. THOMAS AND ST. JOHN

ETHLYN LOUISE HALL,                  )
Individually, and ETHLYN LOUISE      )
HALL, as TRUSTEE of the ETHLYN       )
LOUISE HALL FAMILY TRUST,            )
                                     )   Civil No. 2011-54
              Plaintiff,             )
                                     )
         v.                          )
                                     )
SAMUEL H. HALL, Jr. and HALL &       )
GRIFFITH, P.C.,                      )
                                     )
              Defendants.            )
```

ATTORNEYS:

**Andrew C. Simpson, Esq.**
Law Offices of Andrew Simpson
St. Croix, U.S.V.I.
   *For the plaintiff.*

**Robert L. King, Esq.**
Law Offices of Robert L. King
St. Thomas, U.S.V.I.
   *For the defendantS.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion, filed by Ethlyn Louise Hall, individually and as Trustee of the Ethlyn Louise Hall Family Trust, for reconsideration of the Court's March 29, 2012, order dismissing this matter for lack of subject matter jurisdiction.

I.   FACTUAL AND PROCEDURAL BACKGROUND

At all material times, until approximately April 19, 2002, Ethlyn Louise Hall ("Mrs. Hall")[1] was the owner of the plot of land known as Parcel 17, Estate Peter Bay, St. John, U.S.V.I. ("the Property"). On or about April 19, 2002, Mrs. Hall subdivided the Property into seven separate sub-plots, Parcels 17-1 through 17-7. Mrs. Hall transferred ownership of certain of the plots to her children and grandchildren as gifts. Specifically, she executed a Deed of Gift, granting to her son, Attorney Samuel H. Hall, Jr. ("Attorney Hall")[2], the real property described as:

> Parcel No. 17-5, Estate Peter Bay, No. 2aa Maho Bay Quarter, St. John, U.S. Virgin Islands consisting of 1.161 acre, more or less.

("Parcel 17-5"). She also made the following gifts:

> Parcel 17-2 to her daughter, Elisa Hall;
> Parcel 17-4 to her daughter, Phyllis Hall Brin; and
> Parcel 17-6 to her granddaughter, Yassin Hall Young.

("the Gifts"). Attorney Hall represented his mother in the aforementioned transactions, drawing up the legal documents to accomplish the gifts and recording the same.

---

[1] Mrs. Hall was born on June 6, 1916. She was 94 years old as of the date that the Complaint was filed.

[2] At all relevant times, until sometime in 2010, Attorney Samuel H. Hall, Jr., Mrs. Hall's son, served as Mrs. Hall's attorney.

From April 19, 2002, until approximately December 15, 2010, Mrs. Hall was the owner of the plot of land known as Parcel 17-7, Estate Peter Bay on St. John, U.S. Virgin Islands ("Parcel 17-7").

On January 24, 2003, Mrs. Hall, as landlord, entered into a Ground Lease (the "2003 Ground Lease") with Andrews St. John Trust ("Andrews"), as tenant. The lease was drafted by Attorney Hall. Pursuant to the 2003 Ground Lease, Mrs. Hall leased Parcel 17-7 to Andrews for a period of fifty years. The lease provided that Andrews was to design and build two cottages at Andrews's expense. One cottage was to be built on Parcel 17-6 (the "17-6 Cottage"). It would be owned by Yassin Hall Young. The other cottage was to be built on Parcel 17-4 (the "17-4 Cottage"). It would be owned by Phyllis Hall Brin.

The 2003 Ground Lease provided that, if the 17-6 Cottage was not completed within two years from the date of the lease, Andrews was to pay rent of $5,000 per month ($2,500 to Yassin Hall Young and $2,500 to Phyllis Hall Brin), until the date of completion. If the 17-4 Cottage was not completed within four years of the date of the lease, Andrews was to pay $2,500 per month to Phyllis Hall Brin until the date of completion. Additionally, if the two cottages were not completed in the requisite time, Mrs. Hall, Phyllis Hall Brin, and Yassin Hall

Young retained the right to seek injunctive relief and to sue for specific performance. The lease also provided that the three of them would be granted a first priority lien on any improvements constructed on Parcel 17-7 by Andrews, and on any income derived by Andrews from the use and enjoyment of Parcel 17-7.

Also under the 2003 Ground Lease, Andrews was obligated to reimburse Mrs. Hall for all property taxes on Parcel 17-7, including all property taxes on any improvements thereon.

Attorney Hall collected the rent for his mother under the 2003 Ground Lease. He also managed the reimbursement of property taxes and the construction of the cottages.

At some point in time during the term of the 2003 Ground Lease, changes were made to the design of the 17-6 Cottage, substantially increasing its size. Mrs. Hall was aware of the changes, but alleges that she never agreed to pay the increased costs that resulted therefrom.

On August 3, 2007, Attorney Hall drafted, and Mrs. Hall allegedly signed, a document which allowed Attorney Hall to halt or postpone construction on the 17-4 Cottage. The document allowed Attorney Hall to redirect the rental income from the 2003 Ground Lease to be used instead for the construction of a house on Parcel 17-5, owned by Attorney Hall. The document

*Hall v. Hall*
Civil No. 2011-cv-54
Order
Page 2

states that the consideration for allowing Attorney Hall to redirect the rental income from the 2003 Ground Lease to his own property was that Attorney Hall could "complete his home in order to expedite his assistance of [Mrs. Hall] in [her] future care on St. John." (Compl. ¶ 38.)

On the following day, August 4, 2007, Mrs. Hall allegedly signed a Power of Attorney in favor of Attorney Hall. The Power of Attorney was not notarized. That same day, Attorney Hall drafted, and Mrs. Hall allegedly signed, a document purporting to be an Assignment of Interest. Pursuant to the document, Mrs. Hall signed all of her interest in the 2003 Ground Lease to Attorney Hall in consideration for his "assistance with her future care and upkeep." (Compl. ¶ 39.)

On August 13, 2008, Mrs. Hall allegedly signed another Power of Attorney in favor of Attorney Hall. The document was notarized by Attorney Hall's law partner, Marie Thomas-Griffith. Mrs. Hall has no recollection of executing or intending to execute either Power of Attorney.

In August of 2010, Mrs. Hall sent letters to Attorney Hall requesting that he provide her with a complete accounting of her financial obligations with regard to Parcel 17-7. She also requested that Attorney Hall provide her with information regarding the reimbursement of property taxes paid on Parcel 17-

*Hall v. Hall*
Civil No. 2011-cv-54
Order
Page 2

7. Attorney Hall did not respond to Mrs. Hall's requests for information.

Thereafter, Mrs. Hall became aware that, on or about October 28, 2009, Attorney Hall, purporting to act "individually and as attorney-in-fact for" Mrs. Hall, entered into an "Early Termination of Lease, Mutual Release and Estoppel Certificate" (the "Release"), with Andrews. The Release discharged Andrews of any further obligation under the terms of the 2003 Ground Lease. Mrs. Hall alleges that she was neither aware of, nor did she otherwise consent to or approve of the transaction at the time that Attorney Hall purportedly undertook it on her behalf.

Mrs. Hall also became aware that Attorney Hall, purporting to act as her attorney-in-fact, entered into a lease agreement dated December 2, 2008 (the "2008 Lease"), with the Talton Family Trust ("Talton"). Under the 2008 Lease, Parcel 17-7 was leased to Talton for a period of 75 years, with the rent payment to be made in an $800,000 lump sum. The lump sum was payable to Attorney Hall, as "agent and attorney in fact" for Mrs. Hall. (Compl. ¶ 52.) The lease agreement obligated Talton to reimburse Mrs. Hall for all property taxes on Parcel 17-7. Mrs. Hall asserts that she was neither aware of, nor did she otherwise consent to or approve of this transaction at the time that Attorney Hall purportedly undertook it on her behalf.

*Hall v. Hall*
Civil No. 2011-cv-54
Order
Page 2

On December 15, 2010, Mrs. Hall created the Ethlyn Louise Hall Family Trust ("the Trust"). Also on that date, Mrs. Hall transferred all of her property to the Trust. Mrs. Hall named herself the sole trustee of the Trust.

Subsequently, Mrs. Hall received a letter from Attorney Hall, dated February 1, 2011. The letter informed Mrs. Hall that the 2008 Lease generated a capital gain in 2010 totaling $1,070,000. The letter explained that the capital gain was subject to a capital gains tax of 15%. In the letter, Attorney Hall stated that Mrs. Hall must pay the capital gains tax in the full amount. He explained that he and others who benefited from the capital gains would thereafter reimburse Mrs. Hall for their respective shares which were received as "gifts" from Mrs. Hall.

Thereafter, on May 9, 2011, Mrs. Hall, individually and as Trustee of the Ethlyn Louise Hall Family Trust (the "Trust"), filed a six-count complaint against Attorney Hall and his law firm, Hall and Griffith, P.C. Count One alleges a claim for breach of fiduciary duty against Attorney Hall. Count Two alleges a claim for legal malpractice against Attorney Hall and Hall & Griffith, P.C. Count Three alleges an action for fraud against Attorney Hall. Count Four asks the Court to order an accounting. Count Five asks the Court to establish a constructive trust for allegedly diverted proceeds and other

monies. Count Six requests that the Court impose an equitable lien on Parcel 17-5. The Complaint asserts that Attorney Hall, and Hall & Griffith, P.C., are citizens of the Virgin Islands. (Compl. ¶ 6.) It asserts that Mrs. Hall is a citizen of Florida. (Compl. ¶ 3.) The complaint does not assert the citizenship of the Trust.

In order to determine whether there was diversity of citizenship, on March 2, 2012, the Court ordered Mrs. Hall to file a list of all of the trustees and beneficiaries of the Trust and to identify their citizenship. The Court then ordered Mrs. Hall to file the Trust's establishing documents (the "Declaration of Trust") with the Court. Mrs. Hall filed the Declaration of Trust with the Court for *in camera* review on March 16, 2012.

Thereafter, on March 29, 2012, the Court issued an order in which it found the requisite diversity of citizenship lacking. The Court thus dismissed this matter for lack of subject matter jurisdiction.

On the following day, Mrs. Hall filed a timely motion for reconsideration of the Court's March 29, 2012, order dismissing this matter. Attorney Hall and the defendant law firm oppose.

## II. DISCUSSION

Motions for reconsideration are governed by Local Rule of Civil Procedure 7.3 which provides:

> A party may file a motion asking the Court to reconsider its order or decision. Such motion shall be filed within fourteen (14) days after the entry of the order or decision unless the time is extended by the Court. Extensions will only be granted for good cause shown. A motion to reconsider shall be based on:
>
> 1. intervening change in controlling law;
> 2. availability of new evidence, or;
> 3. the need to correct clear error or prevent manifest injustice.

LRCi 7.3 (2009); *see also Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

Motions for reconsideration are not substitutes for appeals, and are not to be used as "a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not." *Bostic v. AT&T of the V.I.*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004).

A motion for reconsideration, which is filed within twenty eight days of the underlying order, is considered a motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *Rankin v. Heckler*, 761 F.2d 936, 942

(3d Cir. 1985)("Regardless how it is styled, a motion filed within ten[3] days of entry of judgment questioning the correctness of a judgment may be treated as a motion to alter or amend the judgment under 59(e)").

> The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. A proper Rule 59(e) motion therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice.

*Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

### III. ANALYSIS

In the motion to dismiss underlying this motion for reconsideration, Attorney Hall argued that the Court lacks subject matter jurisdiction because complete diversity of citizenship is lacking. As such, it was necessary for the Court to determine the citizenship of each of the parties.

The Supreme Court of the United States has long held that the only relevant citizenship for diversity purposes is that of the "real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980) (citing *McNutt v. Bland*, 43 U.S. 9, 14-15 (1844)). "Thus, a federal court must disregard

---

[3] At the time *Rankin* was decided, Rule 59(e) required a motion to alter or amend a judgment to be filed within ten days of the entry of judgment. The Rule was amended effective December 1, 2009, to change the time for filing a timely motion to alter or amend judgment from 10 days to 28 days.

nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro*, 446 U.S. at 461 (citing *McNutt*, 43 U.S. at 14; 6 C. Wright & A. Miller, Federal Practice and Procedure § 1556, pp. 710-711 (1971)).

"The real party in interest rule ensures that under the governing substantive law, the plaintiffs are entitled to enforce the claim at issue." *HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1196 (3d Cir. 1996) (citations omitted). A court must look to the pleadings in determining whether a plaintiff is entitled to enforce the claim at issue. *See generally Swanson v. Bixler*, 750 F.2d 810 (10th Cir. 1984) (reviewing the allegations in the complaint to determine whether the plaintiff was the real party in interest).

On the face of the pleadings, for jurisdictional purposes, there appear to be two possible parties in interest — the Trust and Mrs. Hall.[4] If the Trust is the real party in interest, the Court must "look to the citizenship of both the trustee and the beneficiary . . ." *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 203 (3d Cir. 2007). That is, the citizenship of both Mrs. Hall and the beneficiaries of the Trust

---

[4] While not dispositive, the Court notes that the Trust was not in existence at the time that many of the facts alleged in the complaint transpired. Indeed, the Trust was created on December 15, 2010. The events which gave rise to the complaint occurred between April, 2002, and August, 2010.

must be considered. If, however, Mrs. Hall is determined to be the real party in interest, then her citizenship alone controls. In undertaking that analysis, the Court will look to each claim asserted in the Complaint.

Count One of the complaint alleges breach of fiduciary duty, "[b]y virtue of Defendant Hall's attorney-client relationship with *Ethlyn Louise Hall* . . ." (Compl. ¶ 66) (emphasis added). The real party in interest for a breach of fiduciary duty claim is the party to whom the duty was owed. *Compare Labovitz v. Washington Times Corp.*, 172 F.3d 897 (D.C. Cir. 1999) (finding that the plaintiff was the real party in interest to pursue a claim for breach of fiduciary duty because the injury arose from a duty owed to the plaintiff) *with G&S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534 (7th Cir. 2012) (finding that plaintiffs whose claims arose from duties owed not to them, but to a third party, were not real parties in interest), *and Weissman v. Weener*, 12 F.3d 84, 87 (7th Cir. 1993) (holding that a party whose injury is derivative, rather than direct, is not the real party in interest), *and Swanson v. Bixler*, 750 F.2d 810, 814 (10th Cir. 1984) (finding that the plaintiff was not the "real party in interest" under Rule 17(a) where he alleged that a fiduciary duty owed to a third party, not to him, was breached).

*Hall v. Hall*
Civil No. 2011-cv-54
Order
Page 2

Here, the complaint alleges that Attorney Hall served as Mrs. Hall's attorney. (Compl. ¶ 66.) It alleges that Attorney Hall, as Mrs. Hall's attorney, had a fiduciary duty to act in Mrs. Hall's best interests. (Compl. ¶ 68.) It also alleges that Attorney Hall breached his fiduciary duty to Mrs. Hall by engaging in certain actions.

The complaint, however, does not allege that a fiduciary relationship existed between Attorney Hall and the Trust. It does not allege that a fiduciary relationship existed between Attorney Hall and any of the Trust's beneficiaries. Similarly, it does not allege that Attorney Hall owed any fiduciary duty to the Trust or to its beneficiaries. Any attempt by the Trust to assert a cause of action for breach of fiduciary duty would be on behalf of Mrs. Hall, a third party. As such, the Court finds that the Trust is not the real party in interest as to the breach of fiduciary duty claim.

Count Two alleges legal malpractice, averring that "[i]n rendering legal services to *Ethlyn Louise Hall*, Defendant Hall and Griffith, P.C. failed to exercise reasonable care and skill and negligently advised *Ethlyn Louise Hall* to enter into the 2003 Ground Lease . . ." (Comp. ¶ 74) (emphasis added). To succeed on a claim for legal malpractice "the plaintiff has the burden of proving 1) the attorney-client relationship giving

*Hall v. Hall*
Civil No. 2011-cv-54
Order
Page 2

rise to a duty; 2) breach of that duty; 3) the causal connection between the negligent conduct and the resulting injury, and 4) actual loss or damage." *Moorehead v. Miller*, 102 F.R.D. 834, 838 (D.V.I. 1984).

As previously discussed, the complaint alleges only that Attorney Hall owed Mrs. Hall, and not the Trust or its beneficiaries, a duty arising from an attorney-client relationship. Because Attorney Hall is not alleged to have owed such a duty to the Trust or its beneficiaries, the Court finds that the Trust is not the real party in interest for the purpose of the legal malpractice claim.

Count Three alleges fraud, contending that "Defendant Hall induced *Ethlyn Louise Hall* to sign documents purporting to reprogram funds from the 2003 Ground Lease for his benefit and induced her into assigning her interest in the 2003 Ground Lease to him by instructing her, in his capacity as her attorney, that she needed to sign the documents." (Compl. ¶ 79) (emphasis added). "In the Virgin Islands, a fraudulent inducement claim has essentially the same elements as common law fraud." *Fitz v. Islands Mechanical Contractor, Inc.*, Civil No. 2008-60, 2010 WL 2384585, *9 (D.V.I. June 9, 2010) (citations omitted). "A plaintiff adequately pleads a common law fraud claim by alleging (1) a false representation of material fact, (2) the defendant's

intent that the statement be acted upon, (3) reliance upon such a statement *by the persons claiming to have been deceived*, and (4) damages." *Beachside Associates, LLC v. Okemo Ltd. Liability Co.*, 2008 WL 5455402, *2 (D.V.I. Dec. 31, 2008) (internal quotations and citations omitted) (emphasis added).

Here, the complaint alleges that Mrs. Hall was deceived, in her individual capacity. It does not allege that the beneficiaries of the Trust were deceived. It does not allege that Mrs. Hall was deceived while acting on behalf of the Trust in her capacity as Trustee. As such, the Court finds that Mrs. Hall, rather than the Trust, is the real party in interest for the purpose of the fraudulent inducement claim.

Counts Four, Five, and Six are not actual causes of action. They simply request, respectively, an accounting; establishment of a constructive trust; and imposition of an equitable lien, all arising from the conduct outlined in Counts One, Two, and Three. There is no conduct alleged in Counts Four through Six which implicates either the Trust or its beneficiaries. Thus, the Court finds that the Trust is not the real party in interest as to Counts Four, Five, and Six.

The Trust is not the real party in interest as to any of the claims asserted in the complaint. Indeed, the Trust is merely a nominal party. While the Trust may have some derivative

or successor interest in the outcome of this matter, it is certainly not the real party in interest. Because the Trust is not the real party in interest, the Court need not look to the Trust's citizenship for the purpose of determining whether diversity jurisdiction is proper. *See Navarro*, 446 U.S. at 461 ("a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.") Specifically, the Court does not have to look to the citizenship of the Trust's beneficiaries. *Cf. Emerald*, 492 F.3d at 203 (explaining that a court should "look to the citizenship of both the trustee and the beneficiary" when the trust the party suing or being sued).

Furthermore, even if the Trust were more than a nominal party, the Court's conclusion would be the same.[5] Indeed, in *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980), the Supreme Court of the United States explained that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." The *Navarro* court

---

[5] At the time the Court issued its March 29, 2012, order dismissing this matter, the issue placed before it was whether the Trust's citizenship should be determined by looking to the citizenship of the Trustee, alone, or the citizenship of both the Trustee and the beneficiaries of the Trust. The Court then focused on applying the holding in *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192 (3d Cir. 2007), to the facts of this case. That focus was too narrow. Given the presence of a nominal party, the Court's inquiry now necessarily must be expanded.

*Hall v. Hall*
Civil No. 2011-cv-54
Order
Page 2

further explained that when a trustee is a real party to the controversy, such trustees "are entitled to bring diversity actions in their own names and upon the basis of their own citizenship. Federal Rule of Civil Procedure 17(a) now provides that such trustees are real parties in interest for procedural purposes." *Id*. at 462 (internal citations omitted).

Here, according to the Trust's establishing documents (the "Declaration of Trust"), Mrs. Hall is the grantee and trustee of the Trust. Also according to the Declaration of Trust, "all rights to all income, profits and control of the trust property shall be retained by the grantor. Grantor retains the right to sell any or all of the trust property during her lifetime." (Declaration of Trust.) Thus, under *Navarro* it is clear that Mrs. Hall, as grantee and Trustee of the Trust, "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." 446 U.S. at 462. Consequently, Mrs. Hall, as Trustee of the Trust, would still be entitled to bring this diversity action in her own name and upon the basis of her own citizenship. *Id*. As such, that Mrs. Hall also brought this action in her capacity as Trustee does not change this Court's conclusion.

Certainly, as pointed out above, Mrs. Hall does not allege in her complaint any injury to the Trust itself, or to the

*Hall v. Hall*
Civil No. 2011-cv-54
Order
Page 2

beneficiaries of the Trust. All of the injury complained of stems from the fiduciary relationship between Mrs. Hall and Attorney Hall. Mrs. Hall in her capacity as Trustee is merely a nominal party to this action. As such, the Court will look only to the citizenship of Mrs. Hall in her individual capacity. *See Navarro*, 446 U.S. at 461.

    The citizenship of the parties is not disputed. In the complaint Mrs. Hall states that she is a "citizen of the State of Florida." (Compl. ¶ 3). Further, Mrs. Hall alleges in her complaint, and Attorney Hall concedes, that he and his law firm are citizens of the U.S. Virgin Islands. As such, the Court finds that there exists the requisite diversity of citizenship for the purpose of exercising subject-matter jurisdiction.

    An appropriate order follows.

                                        S\_____
                                            **Curtis V. Gómez**
                                              **Chief Judge**