IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| ELSA HALL, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ETHLYN LOUISE HALL AND AS SUCCESSOR TRUSTEE OF THE ETHLYN LOUISE HALL FAMILY TRUST,<br><br>   PLAINTIFF,<br><br>   V.<br><br>SAMUEL H. HALL, JR. AND HALL & GRIFFITH, P.C.,<br><br>   DEFENDANTS. | CIVIL NO. 3:11-CV-54 |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE
TO EXCLUDE THE EXPERT TESTIMONY OF DAVID M. NISSMAN

## I.   INTRODUCTION

Defendants' motion rests on a single premise: that because a jury rejected the Estate's breach of fiduciary duty, fraud, and unjust enrichment claims in 2015, "there are no ethical issues to be tried" and expert testimony concerning attorney conduct therefore does not "fit" this case. Mot. at 12, 14. That premise inverts the posture of this case. The Third Circuit vacated the dismissal of the Estate's legal malpractice and conversion claims. [ECF No. 476-1]. A legal malpractice claim requires the Estate to prove that Attorney Hall's conduct fell below the standard of care of a reasonably competent attorney—an element that ordinarily must be proven through expert testimony. *See, e.g., Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985) (expert testimony required in legal malpractice actions except where the lack of skill is obvious to laypersons). Attorney Nissman supplies precisely that: standard-of-care testimony

from a lawyer with nearly five decades of experience, most of it in this Territory, informed by the professional conduct rules that govern Virgin Islands attorneys.

Defendants thus ask the Court to strip the Estate of the very testimony the law requires it to present—presumably so that Defendants may later argue the malpractice claim fails for want of expert proof. *Daubert* is a gate, not a trapdoor. The motion should be denied for that reason alone.

The remainder of the motion is a collection of jury arguments dressed in Rule 702 clothing. Defendants complain that Attorney Nissman relied on materials furnished by counsel (as Rule 703 and Rule 26(a)(2)(B) contemplate); that he never interviewed Ethlyn Hall (who died in 2012, before any party could depose her); that he did not credit rulings from other proceedings that answered different questions; and that he supposedly misapplied Model Rule 1.8(c) (a rule Defendants themselves misread, and whose commentary treats substantial client gifts as "presumptively fraudulent"). Each of those points is classic fodder for cross-examination. None is a basis for exclusion. *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002).

## II. PROCEDURAL BACKGROUND

Ethlyn Hall, individually and as trustee of the Ethlyn Louise Hall Family Trust, commenced this action against her son and former attorney, Samuel H. Hall, Jr., and his firm on May 9, 2011. She died on May 5, 2012, before her deposition could be taken, and her daughter Elsa Hall was substituted as personal representative of the Estate and successor trustee. The amended complaint asserted, among other claims, breach of fiduciary duty, legal malpractice, conversion of property, and conversion of legal

2

files. [ECF No. 32].

In 2015, the breach of fiduciary duty, fraud, and unjust enrichment claims were tried to a jury, which returned a defense verdict; the Third Circuit affirmed that judgment. The Court of Appeals subsequently held that the Estate's legal malpractice claim (Count III) and its conversion claims (Counts IV and V) had been dismissed without an explanation permitting appellate review, vacated the dismissal of those counts, and remanded them for further proceedings. [ECF No. 476-1]. Those reinstated claims are set for trial on August 10, 2026.

On April 24, 2026, the Estate timely served the expert report of David M. Nissman, who was retained to opine on the minimum standards of professional conduct applicable to Attorney Hall's representation of his mother and on whether Attorney Hall's conduct conformed to those standards. Attorney Nissman reviewed, among other things, the operative pleadings, Attorney Hall's deposition in this case with exhibits, Attorney Hall's three-volume deposition in the related Florida litigation, and the Florida judgments. Mot. at 1; [Nissman Report, ECF No. 535-1]. Defendants deposed Attorney Nissman on June 1, 2026. [ECF No. 535-4]. This motion followed.

## III.  LEGAL STANDARD

A preliminary note: Defendants quote a version of Rule 702 that has not been in effect for more than a decade. Mot. at 6. Rule 702 was restyled in 2011 and substantively amended effective December 1, 2023. The rule now provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to

> the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702 (as amended Dec. 1, 2023).

The Estate accepts—and satisfies—its burden of establishing each admissibility requirement by a preponderance of the evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993); FED. R. EVID. 702 advisory committee's note to 2023 amendment. Rule 702 embodies "a trilogy of restrictions": qualification, reliability, and fit. *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The Third Circuit interprets the qualification requirement "liberally": a "broad range of knowledge, skills, and training qualify an expert," *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994), and an expert need not "be the best qualified or . . . have the specialization that the court considers most appropriate," *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) (cleaned up). For experience-based expertise, reliability turns on whether the witness reliably applies his experience to the facts. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-52 (1999). And "fit" is a question of relevance: whether the testimony will assist the trier of fact on an issue actually in the case. *Schneider*, 320 F.3d at 404.

## IV.    ARGUMENT

### A.    EXPERT STANDARD-OF-CARE TESTIMONY IS NOT MERELY ADMISSIBLE ON THE REINSTATED MALPRACTICE CLAIM—IT IS REQUIRED

The centerpiece of Defendants' motion is the assertion that "[t]he issues remaining in this case have nothing to do with legal ethics." Mot. at 9, 12. That assertion cannot be squared with the elements of the claim the Third Circuit remanded for further proceedings. To prevail on legal malpractice, the Estate must prove (1) an attorney-client relationship giving rise to a duty; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) damages. *Reynolds v. Rohn*, 70 V.I. 887, 895 (2019). The standard of care "is a question of fact" that must be established by evidence, and "expert testimony is required" in legal malpractice cases except in the rare case where the deficiency is so obvious that laypersons can evaluate it unaided. *Gans*, 762 F.2d at 341-43.

The professional conduct rules governing Virgin Islands lawyers are directly relevant to that standard. The ABA Model Rules of Professional Conduct govern the conduct at issue here[1] and they say so themselves. Defendants quote the Scope section's statement that a rule violation "should not itself give rise to a cause of action," Mot. at 9, but omit the very next proposition in the same paragraph:

> Nevertheless, since the Rules do establish standards of
> conduct by lawyers, a lawyer's *violation of a Rule may be*

---

[1] *See Lee J. Rohn & Assocs., LLC v. Chapin*, No. ST-16-CV-655, 2018 WL 6721388, at *4, n.19 (V.I. Super. Dec. 18, 2018) (explaining that until February 1, 2014, when V.I. Supreme Court Rule 211 went into effect, the ABA Model Rules of Professional Conduct applied in the Virgin Islands).

*evidence of breach of the applicable standard of conduct.*

MODEL RULES OF PROF'L CONDUCT, Scope [20] (emphasis added). The Restatement is to the same effect: proof of a violation of a rule regulating lawyer conduct "may be considered by a trier of fact as an aid in understanding and applying the standard" of care. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 52(2) (2000). Attorney Nissman does not offer the Rules as a freestanding basis for civil liability—he testified expressly, and Defendants concede, that he offers no opinion that any cause of action is or is not viable. Mot. at 4. He offers the Rules for exactly the purpose the Rules' own Scope section, the Restatement, and malpractice jurisprudence sanction: as evidence of the minimum standard of professional conduct against which the jury will measure Attorney Hall's acts and omissions.

Defendants' alternative—that "[a] judge's instruction on the ethical standard . . . is sufficient," Mot. at 5—confuses the Court's role in instructing on the law with the parties' obligation to prove the fact of the professional standard of care and its breach. *Gans*, 762 F.2d at 341-43 (even a judge "competent to evaluate" attorney conduct must rely on expert testimony to establish the standard of care). If Defendants were right, no legal malpractice plaintiff could ever call a standard-of-care expert—and every legal malpractice plaintiff would be directed out of court for failing to call one.

### B. THE 2015 VERDICT ON DISTINCT CLAIMS DOES NOT ERASE THE CLAIMS THE THIRD CIRCUIT REINSTATED

Defendants argue at length that a jury "has already spoken" and that the Third Circuit's affirmance of the verdict on breach of fiduciary duty, fraud, and unjust

6

enrichment leaves "no ethical issues to be tried." Mot. at 12-14. Three answers.

First, the argument collides with the mandate. The same Court of Appeals that affirmed the 2015 verdict reinstated the legal malpractice and conversion claims and remanded them for further proceedings. [ECF No. 476-1]. The court of appeals was fully aware of the verdict it had just affirmed; it nonetheless held that Counts III, IV, and V remain to be adjudicated. On remand, this Court must proceed in accordance with that mandate. *See Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985). Defendants' suggestion that the prior verdict already resolved everything worth trying is, at bottom, a collateral attack on the remand itself.

Second, if Defendants believe the prior verdict has preclusive effect on issues embedded in the malpractice and conversion claims, the vehicle for that contention is a properly supported dispositive motion—with the elements of issue preclusion briefed and the verdict parsed—not a motion in limine. The Third Circuit has condemned the use of in limine motions as a substitute for summary judgment. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069-70 (3d Cir. 1990). The same is true of Defendants' passing statute-of-limitations argument, Mot. at 3-5, which was the subject of earlier summary judgment practice [ECF Nos. 239-247] and forms no part of any Rule 702 analysis.

Third, the argument is wrong on its own terms. Breach of fiduciary duty, fraud, and unjust enrichment are torts with elements distinct from negligence-based legal malpractice and from conversion. A jury's finding that Attorney Hall did not breach duties of loyalty, did not defraud his client, and was not unjustly enriched does not

decide whether he failed to exercise the skill, care, and diligence of a reasonably competent attorney, or whether he converted property or client files. The 2015 jury was never asked those questions; the August 2026 jury will be. Attorney Nissman's standard-of-care testimony fits the claims actually being tried. "Fit" requires nothing more. *Schneider*, 320 F.3d at 404.

Defendants' related complaint—that Attorney Nissman "was not informed" of the prior verdict, Mot. at 7—is a cross-examination point, and a weak one. The prior verdict resolved different claims. An expert's asserted failure to weigh material a party deems important "goes to the weight, not the admissibility" of the opinion, and Rule 705 places the burden of exploring such matters on the cross-examiner. *Stecyk*, 295 F.3d at 414.

## C. ATTORNEY NISSMAN IS QUALIFIED UNDER THE THIRD CIRCUIT'S LIBERAL STANDARD

Defendants concede that Attorney Nissman has practiced law for forty-eight years, most of them in the Virgin Islands, and that he published an ethics manual during his service with the United States Department of Justice. Mot. at 5. Attorney Nissman describes his credentials at page one of his report [ECF No. 535-1]:

> I have been a trial lawyer, an Adjunct Assistant law Professor, an Assistant Director of the U.S. Department of Justice Office of Legal Education, and have served in a number of capacities that imposed fiduciary duties on me. In addition, I served as the United States Attorney for the Virgin Islands, as a partner in a Virgin Islands law firm, and as a legal author. As the Publisher for the United States Department of Justice, I was the Editor-in-Chief of a Department Ethics Manual and additionally published an issue of the United States Attorney's Bulletin, the

Department's national magazine, devoted to ethics.

Under this Circuit's precedent, that experience comfortably qualifies him: qualification is construed "liberally," a "broad range of knowledge, skills, and training" suffices, and "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or . . . [to] have the specialization that the court considers most appropriate." *Paoli*, 35 F.3d at 741; *Holbrook*, 80 F.3d at 782; *see also Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998).

Defendants' demand for an expert in the "ethics of a mother son gift," Mot. at 6, is precisely the hyper-specialization gambit *Paoli* and *Holbrook* reject. There is no sub-discipline of "mother-son gift ethics." There is the law of lawyering—conflicts, client communication, safekeeping and accounting for client property, dealings with clients of diminished capacity—and Attorney Nissman has spent a professional lifetime immersed in it, in this Territory. Nor can Defendants have it both ways: they insist Attorney Nissman's views are "no more expert than those of an ordinary juror," Mot. at 6, while simultaneously insisting that professional responsibility standards are so specialized that only the Court may speak of them, Mot. at 5, 8. Both cannot be true, and neither is. The standards governing an attorney's handling of an elderly client's affairs are exactly the sort of "specialized knowledge" beyond a lay jury's ken that Rule 702 contemplates.

That Attorney Nissman "does not hold himself out as an expert in contracts, torts, real or property law," Mot. at 5, is irrelevant: he is not offered on those subjects. He is offered on professional conduct standards—his field.

9

### D. RELIANCE ON COUNSEL-PROVIDED MATERIALS AND DISCLOSED ASSUMPTIONS IS STANDARD EXPERT METHODOLOGY UNDER RULES 702, 703, AND 26

Defendants deride the report as a "cut and paste" of facts and "assumptions" supplied by counsel, and brand Attorney Nissman an "Oath Helper." Mot. at 2, 6-7. The epithet has no citation because it has no legal content. What the record shows is an expert doing what the Federal Rules require of him.

Rule 703 expressly permits an expert to base an opinion on facts or data "that the expert has been made aware of," including facts supplied by counsel, provided they are of a kind reasonably relied upon by experts in the field. FED. R. EVID. 703. Rule 26(a)(2)(B)(i) then requires the report to disclose "the facts or data" considered and the bases of each opinion. An expert who transparently sets out the factual record he reviewed and the assumptions underlying his opinions is complying with the disclosure rules, not violating Daubert. And the materials Attorney Nissman reviewed—the operative pleadings, Attorney Hall's own sworn deposition testimony in two proceedings (four volumes in all), and the Florida judgments—are the core record of this case, much of it consisting of Defendants' own words under oath. Mot. at 1.

The Third Circuit's rule is settled:"A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination." *Stecyk*, 295 F.3d at 414. An expert is likewise entitled to base his opinions on one party's version of disputed facts; if the Estate fails to prove those facts at trial, Defendants' remedy lies in argument and, if warranted, a Rule 50 motion—not

in pretrial exclusion. *See* FED. R. EVID. 702 advisory committee's note to 2000 amendment (an expert may offer opinions based on "the facts of the case" as one side expects to prove them).

As for the accusation that Attorney Nissman "never met Ethlyn Hall" and never reviewed her deposition, Mot. at 7: no such deposition exists, because Mrs. Hall died on May 5, 2012—a fact Defendants acknowledge in the same breath, Mot. at 1-2. It is difficult to conceive of a less probative criticism than an expert's failure to review testimony that was never given. Defendants' own experts labor under the identical limitation. If Defendants mean to insinuate that the Estate is responsible for the absence of that testimony, the insinuation is both baseless and beside any Rule 702 point: Mrs. Hall was alive and available for deposition for a year after suit was filed, and Defendants—like the Estate—did not depose her before her death.

### E. ATTORNEY NISSMAN'S TESTIMONY ASSISTS THE JURY; IT DOES NOT USURP THE ROLE OF JUDGE OR JURY

Defendants invoke *Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005)—an out-of-circuit decision about a police practices expert who vouched for officers' credibility—for the proposition that Attorney Nissman "tells the jury what result to reach." Mot. at 7-8. The record Defendants themselves quote refutes the charge. Attorney Nissman testified that he "was not asked to opine whether there were bonafide causes of action," that whether a claim is viable "is judge stuff," and that he was retained solely to opine on whether the conduct at issue met minimum standards of professional conduct. Mot. at 4.

That is not usurpation; it is discipline. This Circuit's line is clear: an expert may not deliver ultimate legal conclusions, but may testify to professional and industry customs, practices, and standards, and to whether conduct conformed to them. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217-18 (3d Cir. 2006); *United States v. Leo*, 941 F.2d 181, 196-97 (3d Cir. 1991). Attorney Nissman stays on the permissible side of that line (by his own account and by Defendants'). And to the extent his opinions bear on an ultimate factual issue (whether Attorney Hall's conduct met the standard of care), Rule 704(a) answers the objection: "[a]n opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704(a).

Defendants' argument, pressed to its logic, would bar standard-of-care experts from every professional negligence trial—medical, legal, accounting, engineering—since every such expert measures conduct against professional norms. That is not the law anywhere, and it is certainly not the law of this Circuit. *Gans*, 762 F.2d at 341-43.

## F. DEFENDANTS' REMAINING ARGUMENTS ARE MERITS DISPUTES FOR CROSS-EXAMINATION, NOT GROUNDS FOR EXCLUSION

### 1. RULE 1.8(C)

Defendants assert that Rule 1.8(c) "expressly permits gifts from a client where the client and the attorney are closely related" and "deem[s] the gift valid despite the potential for a conflict of interest." Mot. at 11. The rule says no such thing. Rule 1.8(c) prohibits a lawyer from soliciting a substantial gift from a client, or from preparing an instrument giving the lawyer or the lawyer's relatives a substantial gift, "unless the lawyer or other recipient of the gift is related to the client." MODEL RULES OF PROF'L

CONDUCT R. 1.8(c). The related-client proviso is an exception to the drafting-and-solicitation prohibition. It does not "deem" any gift "valid," and the accompanying commentary says the opposite of what Defendants claim: a substantial gift from a client "may be voidable by the client under the doctrine of undue influence, which treats client gifts as presumptively fraudulent." *Id*. cmt. [6]. Moreover, Attorney Nissman explains at page 13 of his report [ECF No. 535-1] why Model Rule 1.8(c) does not allow an attorney to avoid the strictures of Model Rule 1.7.

More fundamentally, Rule 1.8(c) does not suspend the rest of the lawyer's obligations for transactions with relatives. The duties of communication, of safekeeping and accounting for client property, and of appropriate care toward a client with diminished capacity all persist. Whether Attorney Nissman gave Rule 1.8(c) the weight Defendants think it deserves is a question for cross-examination and for Defendants' own expert.

### 2.    DIMINISHED CAPACITY

Defendants argue that Attorney Nissman's discussion of Ethlyn Hall's diminished capacity is "unsupported" because he reviewed no medical records and because "a Florida court found that Ethlyn Hall did not have diminished capacity." Mot. at 10. The argument misapprehends the governing standard. Rule 1.14(b) is triggered when "the lawyer reasonably *believes* that the client has diminished capacity"—it turns on the lawyer's contemporaneous perception of his client, not on a medical diagnosis. The Florida court's finding addressed a different question: Ethlyn Hall's capacity for a different purpose, at a different time, under a different legal standard. That decision

is not relevant to, and says nothing about, what a reasonable attorney in Samuel Hall's position perceived during the representation. Whether the trial evidence bears out the predicates of Attorney Nissman's opinion is, once again, a matter of weight for cross-examination.

### 3. THE 2003 GROUND LEASE AND THE DUTY TO ACCOUNT

Defendants contend that because "nothing in the 2003 Ground lease placed a burden on Attorney Hall . . . to make an accounting," Attorney Nissman could not find an accounting-related breach. Mot. at 10. The premise is a *non sequitur*. An attorney's obligation to account to his client for the client's funds and property arises from the attorney-client relationship and the rules governing safekeeping of client property—not from the terms of the client's lease with a third party. See MODEL RULES OF PROF'L CONDUCT R. 1.15. Defendants are free to argue to the jury that no accounting duty was triggered on these facts; that is a merits dispute between experts, not a *Daubert* defect.

### 4. THE ABSENCE OF A BAR COMPLAINT

Finally, Defendants observe that Ethlyn Hall never filed a grievance "before the appropriate committee of the Bar." Mot. at 11. There is no rule—and Defendants cite none—conditioning standard-of-care expert testimony on the client's having initiated disciplinary proceedings. Disciplinary machinery and civil malpractice liability are independent tracks. What Mrs. Hall did do, during her lifetime, was sue her son over the very conduct at issue. She filed this action herself on May 9, 2011. Mot. at 3. The suggestion that she never complained is refuted by the caption of this case.

## V. CONCLUSION

Defendants' motion identifies no deficiency of qualification, reliability, or fit. It asks the Court to bar the standard-of-care testimony the Estate is required to present on the very claims the Third Circuit remanded for trial, on the strength of merits arguments that belong to the jury and preclusion arguments that belong—if anywhere—in a dispositive motion Defendants did not file. The motion should be denied. In the alternative, any concern the Court may harbor about particular phrasing in the report is properly addressed through objections at trial or a narrowly tailored limiting instruction, not wholesale exclusion.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.**
Attorneys for Elsa Hall, as Personal
Representative of the Estate of
Ethlyn Louise Hall and as Successor
Trustee of The Ethlyn Louise Hall
Family Trust

Dated: July 9, 2026          /s/ Andrew C. Simpson
Andrew C. Simpson (VI Bar 451)
2191 Church Street, Suite 5
Christiansted, VI 00820
(T) 340-719-3900
asimpson@coralbrief.com

15