IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

ELSA HALL, AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF ETHLYN LOUISE HALL AND AS
SUCCESSOR TRUSTEE OF THE ETHLYN LOUISE
HALL FAMILY TRUST,

     PLAINTIFF,

  V.

SAMUEL H. HALL, JR. AND
HALL & GRIFFITH, P.C.,

     DEFENDANTS.

CIVIL NO. 3:11-CV-54

PLAINTIFF'S OMNIBUS MOTION IN LIMINE

INTRODUCTION

Plaintiff moves in limine for three orders defining the proper scope of the new trial in this case. The case is now in a procedurally different posture than it was at the time of the January 2015 trial. That was a consolidated trial of two cases—the Trust's professional liability claims against Samuel H. Hall, Jr. and his firm (No. 3:11-cv-00054), and Mr. Hall's individual claim against Elsa Hall for intentional infliction of emotional distress (No. 3:13-cv-00095). The 2013 claim has been severed and is no longer consolidated with this case. What remains for trial are the Trust's surviving claims—legal malpractice, conversion, tax-liability damages, and equitable relief—which the Third Circuit remanded to this Court. Those claims turn on what Samuel Hall did as Ethlyn Hall's attorney: how he handled her powers of attorney, the lease proceeds, and her tax exposure. They do not turn on Ethlyn Hall's mental capacity, on Elsa Hall's character, or on which side of the family the jurors would

rather stand with.

Because the 2015 trial was tried on a broader, now-superseded footing, a substantial portion of that record is no longer admissible. This motion asks the Court to enter three orders in advance of trial so that the retrial is confined to the surviving claims:

I.   Excluding evidence and argument that Ethlyn Hall lacked testamentary or mental capacity—an issue conclusively resolved against Defendants by a final Florida probate judgment and irrelevant to every surviving claim—while expressly preserving the Trust's distinct and proper use of Samuel Hall's own *perception* of his mother's decline as evidence of the heightened standard of care applied to a lawyer who believes his client is impaired;

II.   Precluding attacks on Elsa Hall's character and conduct—including "parasite" and animosity rhetoric; her structurally similar property and financial dealings offered as a "she-did-it-too" defense; and evidence relevant only to the emotional distress claim in the 2013 case; and

III.   Precluding appeals to local or regional "us-versus-outsider" bias—a theme the defense pressed to the 2015 jury in the words, "sometimes justice is just us"—that invite the jury to favor the local defendant over the daughter who moved to Florida.

**THE STANDARD GOVERNING MOTIONS IN LIMINE**

The motion in limine is a creature of the trial court's inherent authority to manage the conduct of trial, not of any evidentiary rule. *Luce v. United States*, 469 U.S. 38, 41

n.4 (1984). Its purpose is to permit the court "to rule in advance of trial on the admissibility and relevance of certain forecasted evidence," and thereby "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *United States v. Johnston*, No. 2026 WL 925704, at *1 (D.V.I. Apr. 6, 2026); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (a motion in limine "is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions") (overruled on other grounds by *Goetzke v. Ferro Corp.*, 280 F.3d 766 (7th Cir. 2002).

On such a motion, "evidence should only be excluded when the evidence is clearly inadmissible on all potential grounds." *Johnston*, 2026 WL 925704, at *1 (quoting *Tartaglione*, 228 F. Supp. 3d at 406). Where an issue is fully briefed and the record permits a definitive ruling, the motion in limine "provides a useful tool for eliminating unnecessary trial interruptions"; but, in certain situations, "a trial court should defer ruling on an evidentiary issue if the nature or relevance of the evidence is unclear before trial." *Am. Home Assur. Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 324 (3d Cir. 1985). Evidentiary rulings, including rulings on motions in limine, are reviewed for abuse of discretion. *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995) (overruled on other grounds by *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)); *United States v. Gilmore*, 553 F.3d 266, 271 (3d Cir. 2009) (abuse-of-discretion review, but plenary review of the interpretation of the Rules of Evidence).

Two limits on the vehicle bear directly on this motion, and the Trust addresses

3

them at the outset. First, an in-limine ruling is interlocutory; it "is subject to change when the case unfolds," and the trial judge remains "free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Luce*, 469 U.S. at 41-42; *accord Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Second, the Third Circuit has cautioned that "rulings excluding evidence on Rule 403 grounds should rarely be made in limine," because Rule 403 is "a trial-oriented rule" and a court ordinarily "cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 747 (3d Cir. 1994) ("Paoli II") (a Rule 403 pretrial exclusion is rarely appropriate without a record that is "a virtual surrogate for a trial record").

These limits do not counsel deferral here—at least as to MILs I and II. The "clearly inadmissible on all potential grounds" threshold is satisfied because capacity and character evidence are inadmissible under every theory the defense could advance, as shown below. And the "virtual surrogate for a trial record" concern is fully answered: this Court has before it the complete four-day 2015 trial record and the Florida probate trial record, which together supply exactly the developed factual context that *Paoli* requires before a Rule 403 exclusion may issue pretrial. The considerations that ordinarily counsel deferral—an undeveloped record, uncertain relevance—are absent where, as here, the challenged evidence has already been presented at a prior trial and its purpose and effect are fully known. The Trust therefore requests definitive pretrial rulings, which will streamline the retrial and, once made "on the record" without a

suggestion of reconsideration, preserve the issues without the need for repeated objection. *Am. Home*, 753 F.2d at 325; *Walden*, 126 F.3d at 519; FED. R. EVID. 103(b). As to MIL III, which addresses improper argument rather than evidence, the Trust seeks a ruling under the Court's inherent authority over the conduct of counsel, and a directive that any such argument will draw a contemporaneous curative response (see Part III).

**ARGUMENT**

**I. THE COURT SHOULD EXCLUDE EVIDENCE AND ARGUMENT THAT ETHLYN HALL LACKED TESTAMENTARY OR MENTAL CAPACITY, WHILE PRESERVING THE TRUST'S USE OF SAMUEL HALL'S PERCEPTION OF HER DECLINE**

Defendants' 2015 defense rested heavily on the assertion that Ethlyn Hall was mentally incapacitated. Counsel told the jury in opening that "Mrs. Hall was suffering from dementia and no longer possessed the ability to make the major decisions" [Day 1, p.27:1-3], and that at the June 2011 signing "she was weak, she was frail, and the documents will show that her signature was severely impaired" [Day 1, p.24:14-21]. Defense witnesses testified that in 2009 Ethlyn "became confused" and believed a woman from decades past "was trying to … break into her house" [Day 3, p.74:9-11; p.75:1-4], and the defense read deposition testimony that Ethlyn declined when her daughter visited [Day 2, p.229:11-14]. In closing, counsel argued the instruments were valid because Ethlyn acted "at a time when she had all of her faculties" [Day 4, p.30:13-15; p.31:1-3]. All of this should be excluded. Ethlyn Hall's capacity has been conclusively adjudicated in the Trust's favor, it is irrelevant to every surviving claim, and admitting it would invite the jury to relitigate a settled question and decide this

case on an improper basis.

## A.   THE FLORIDA PROBATE JUDGMENT PRECLUDES RELITIGATION OF ETHLYN HALL'S CAPACITY

After a trial, the Florida probate court upheld Ethlyn Hall's testamentary capacity and the validity of the November 10, 2010 trust and pour-over will, and the Florida Third District Court of Appeal affirmed. *In re Trust of Ethlyn L. Hall*, 190 So. 3d 683 (Fla. 3d DCA 2016). Samuel Hall and Yassin Hall were the petitioners who contested those instruments and lost. That judgment is entitled to preclusive effect here.

Section 1738 of Title 28 of the U.S. Code makes Florida preclusion law govern. The Full Faith and Credit Act requires this Court to give the Florida judgment "the same preclusive effect" it "would be given in the courts of the State from which the judgment[] emerged." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982); 28 U.S.C. § 1738. The statute "commands a federal court to accept the rules chosen by the State from which the judgment is taken," *id.* at 481-82, and it reaches issue preclusion, not merely claim preclusion, *Allen v. McCurry*, 449 U.S. 90, 96 (1980). The Third Circuit applies the same rule: "A federal court applying preclusion principles is bound by the Full Faith and Credit statute, 28 U.S.C. § 1738, and must give a prior state judgment the same effect as would the adjudicating state." *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988). Florida preclusion law therefore governs.

Florida collateral estoppel bars Samuel Hall from relitigating capacity. Florida applies collateral estoppel where "(1) an identical issue [was] presented in a prior proceeding; (2) the issue. . . was a critical and necessary part of the prior

determination; (3) there. . . [was] a full and fair opportunity to litigate the issue; (4) the parties in the two proceedings. . . [are] identical; and (5) the issue[]. . . [was] actually litigated." *Provident Life & Accident Ins. Co. v. Genovese*, 138 So. 3d 474, 477 (Fla. 4th DCA 2014); *accord Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995) (collateral estoppel "prevents identical parties from relitigating the same issues that have already been decided"). Each element is met: Ethlyn Hall's capacity to execute the 2010 instruments was the central issue in the Florida contest; it was necessary to the judgment upholding those instruments; Samuel and Yassin Hall fully litigated it through trial and appeal; and it was actually decided against them.

The one element that requires attention is party identity, because Florida—unlike the federal courts—retains a strict mutuality requirement. "[C]ollateral estoppel may be asserted only when the identical issue has been litigated between the same parties or their privies," and the Florida Supreme Court has declined "to follow the lead of certain other states and of the federal courts in abandoning the requirements of mutuality." *Stogniew v. McQueen*, 656 So. 2d 917, 919-20 (Fla. 1995). That requirement is satisfied here, and cleanly: Samuel Hall was himself a petitioner-contestant in the Florida proceeding, so preclusion runs directly against him. *Cf. Prudential Ins. Co. of Am. v. Turkal*, 528 So. 2d 487, 488 (Fla. 3d DCA 1988) (collateral estoppel inapplicable where a party "was neither a party to the probate action nor in privity with any party"). Because the Trust asserts preclusion against the very party who litigated and lost capacity in Florida, mutuality presents no obstacle.

Florida's probate-finality statute is an independent bar. Separately, Florida law

provides that "the probate of a will in Florida shall be conclusive of . . . that it was executed by a competent testator, free of fraud, duress, mistake, and undue influence" in "any collateral action or proceeding relating to devised property." Fla. Stat. § 733.103(2); *Ebeling v. Voltz*, 454 So. 2d 783, 785 (Fla. 4th DCA 1984). That statute "is little more than the codification of the common-law rule against collateral attack and is predicated on principles of res judicata and collateral estoppel," and it bars a party who "had notice and adequate opportunity" to contest the will from relitigating testamentary capacity and undue influence. *DeWitt v. Duce*, 408 So. 2d 216, 218, 220-21 (Fla. 1981); *accord Kramer v. Freedman*, 272 So. 2d 195, 199 (Fla. 3d DCA 1973) (issues of undue influence "litigated . . . in the prior . . . proceedings" are "barred under the theory of collateral estoppel"), approved in *DeWitt*, 408 So. 2d at 220. Federal courts apply Florida preclusion law to the same effect. *Audette-Weaver v. J.G. Wentworth, S.S.C., L.P.*, 2008 WL 11336685, at *3 (M.D. Fla. Feb. 26, 2008).

### B.   CAPACITY IS IRRELEVANT TO EVERY SURVIVING CLAIM AND INDEPENDENTLY EXCLUDABLE UNDER RULE 403

Preclusion aside, capacity evidence fails the most basic test of admissibility: relevance. Evidence is relevant only if it bears on "a fact . . . of consequence in determining the action." FED. R. EVID. 401(b); *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 85 (3d Cir. 2019) (evidence is admissible only if it tends to make "a disputed material fact" more or less probable). Ethlyn Hall's mental capacity is not an element of legal malpractice, of conversion, or of the tax-liability damages claim, and it is not an element of any defense the Defendants may properly assert. Evidence directed

solely at a fact that is not an element of any claim or defense is irrelevant and inadmissible as a matter of law. FED. R. EVID. 402; *cf. Argush v. LPL Fin., LLC*, 759 F. App'x 121, 124 (3d Cir. 2018) (where a party's motive and intent "were irrelevant" because not elements of the claim, the evidence was properly excluded, and a court may exclude the evidence if its probative value was "substantially outweighed by a risk of confusing the issues and misleading the jury" (among other grounds).

Even if capacity evidence carried some residual relevance, it should be excluded under Rule 403. Its probative value is minimal-to-nonexistent—capacity is not in issue and has been decided—while its proclivity to confuse the issues, mislead the jury, and waste time is acute. Admitting it would produce precisely "a trial within a trial," as the jury is invited to reopen a medical-and-testamentary contest that consumed a separate multi-week Florida proceeding. *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343-46 (3d Cir. 2002) (Rule 403 framework; affirming exclusion where the evidence would create "a trial within a trial in fact" and where "undue delay and waste of time" was sufficient to "tip the scales in favor of" exclusion). This Court sits where the Third Circuit has long recognized the trial court's "sound discretion. . . to exclude relevant evidence on the grounds of 'confusion of the issues' and 'considerations of undue delay, waste of time.'" *David by Berkeley v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 238 (3d Cir. 1984). Rule 403 asks the court to "balance the genuine need for the challenged evidence against the risk. . . [of] confus[ing] the jury and delay[ing] trial," *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 453 (3d Cir. 1997), and here there is no genuine need at all.

9

The ordinary reluctance to make Rule 403 rulings in limine, *Walden*, 126 F.3d at 518 n.10, does not apply, because the Court has "a virtual surrogate for a trial record"—indeed, an actual prior trial record—before it. *Paoli II*, 35 F.3d at 747.

C. **THIS EXCLUSION DOES NOT REACH—AND THE TRUST AFFIRMATIVELY PRESERVES—SAMUEL HALL'S PERCEPTION OF HIS MOTHER'S DECLINE**

The Trust's motion is precise, and its precision matters. Excluding evidence offered to prove that Ethlyn Hall actually lacked capacity is not the same as excluding evidence of what Samuel Hall perceived about his mother's condition at the time he was taking action on her behalf or advising her. The two are distinct in purpose and in effect, and the second is important to the Trust's malpractice case. The Trust does not contend Ethlyn Hall lacked capacity—the Florida judgment establishes she had it. The Trust contends that Samuel Hall, as her attorney, perceived what he thought were signs of her cognitive decline and, instead of discharging the heightened duties that perception triggered, engaged in self-dealing. That is a claim about the lawyer's knowledge, not the client's mental state.

Evidence of Samuel Hall's *perception* is admissible for that non-hearsay purpose. A statement or observation offered to show its "effect on the listener"—the listener's notice, knowledge, or resulting state of mind—is not offered for the truth of the matter asserted and is therefore not hearsay. FED. R. EVID. 801(c)(2). "When a person's knowledge or state of mind is at issue, evidence that he has heard or read a statement may be relevant and it lies beyond reach of a hearsay objection." *Borrell v. Bloomsburg Univ.*, 207 F. Supp. 3d 454, 502 (M.D. Pa. 2016) (cleaned up). Evidence offered "to show

notice, knowledge, standard of care, or state of mind . . . would not be for a hearsay purpose." *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, 181 F. Supp. 3d 278, 314-15 (E.D. Pa. 2016). The Third Circuit has applied the same rule, admitting statements offered "to explain why" a decision-maker acted—"for the statements' effect on the listener"—as "admissible for a non-hearsay purpose." *Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 65 (3d Cir. 2019); *see United States v. Edwards*, 792 F.3d 355, 357 n.2 (3d Cir. 2015).

The Trust acknowledges the Court's independent duty to confirm that a proffered non-hearsay purpose is genuine and not a pretext for putting inadmissible matter before the jury. *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993) (courts "have a responsibility to assess independently whether the ostensible non-hearsay purpose is valid"). That duty is satisfied here: Samuel Hall's notice of his mother's decline is not a subsidiary or manufactured issue—it is the trigger for the professional duties of a key aspect of the malpractice claim, and thus a genuine, material non-hearsay purpose. To keep the distinction clean, the Trust will request a limiting instruction under Rule 105, which "on timely request" requires the Court to "restrict the evidence to its proper scope and instruct the jury accordingly." FED. R. EVID. 105; *Cf. United States v. Elysee*, 993 F.3d 1309, 1339 (11th Cir. 2021). A properly framed instruction confines the jury's use of the perception evidence to Samuel Hall's knowledge and away from any inference about Ethlyn Hall's actual capacity. *See United States v. Linwood*, 142 F.3d 418, 426 (7th Cir. 1998) (juries are presumed to follow limiting instructions absent an

11

"overwhelming probability" they cannot). The Trust will request the instruction on the record; the obligation is triggered on timely request. *United States v. Duran*, 941 F.3d 435, 460 (10th Cir. 2019).

The perception evidence is relevant because a lawyer's professional duties are triggered by the lawyer's reasonable belief of diminished capacity, not by a formal adjudication of incapacity. Under the professional conduct rules in force during the 2007-2011 conduct—the ABA Model Rules of Professional Conduct, adopted in the Virgin Islands via V.I. Sup. Ct. R. 203(a) and applied in this District via LRCi 83.2—Model Rule 1.14(b)'s protective duties attach when "the lawyer reasonably believes that the client has diminished capacity." Courts applying the identical text confirm the trigger is the lawyer's reasonable belief, not a legal-incapacity finding. *Kern v. Gandhi*, 2025 WL 2170527, at *4 (D. Minn. July 31, 2025) ("This rule does not require that a litigant be 'legally incapacitated.' By its plain language, Rule 1.14 applies when the lawyer 'reasonably believes' that the client has a"diminished capacity."").

**REQUESTED ORDER (MIL I):** an order (1) precluding Defendants from offering evidence or argument that Ethlyn Hall lacked testamentary or mental capacity, or was subject to undue influence, in connection with the 2010 trust and will or the 2007-2008 instruments; and (2) expressly confirming that this order does not preclude the Trust from offering evidence of Samuel Hall's contemporaneous perception of Ethlyn Hall's cognitive decline for the non-hearsay purpose of establishing his knowledge and the professional duties it triggered, subject to a Rule 105 limiting instruction.

## II. THE COURT SHOULD PRECLUDE ATTACKS ON ELSA HALL'S CHARACTER AND CONDUCT

The 2015 defense did not confine itself to defending Samuel Hall's conduct; it went on the offensive against Elsa Hall. Samuel Hall called his sister "a leech and a parasite" and admitted he "hate[d]" her [421-2, Jan. 13, 2015 trial transcript, 24:6–14]; the defense told the jury the case was about Elsa's "greed" and her "reaping and plundering from the hard-earned assets of Mrs. Ethlyn Hall" [ECF 421-1, Jan. 12, 2015 trial transcript, 20:13–24; 21:14–16], and that it was "really about Elsa Hall stealing from her mother . . . caus[ing] Sam severe emotional distress" [*id.*, 26:13–15]. It cross-examined Elsa at length about her own property and financial dealings—that she leased Ethlyn's property to an entity she controlled "for zero rent" [ECF 421-2, 80:4–5; 81:17–21], that lease proceeds went into an account on which she was "the only signatory" [*id.*, 192:23–25; 105:17–24], and that she "used the power of attorney" over her mother's funds [*id.*, 195:10–15]—and argued in closing that "Elsa Hall rented her property . . . to herself, to her company, took all the money" [ECF 421-4, Jan. 15, 2015 trial transcript, 35:18–36:8]. None of this bears on whether Samuel Hall committed malpractice or converted lease proceeds. It should be excluded on four independent grounds. The Trust is careful to seek to rein in improper character attacks, not to immunize Elsa Hall from legitimate impeachment as a witness; the fourth point preserves that impeachment expressly.

### A. CHARACTER AND OTHER-ACTS EVIDENCE IS BARRED BECAUSE ELSA HALL'S CHARACTER IS NOT AN ELEMENT OF ANY SURVIVING CLAIM OR DEFENSE

"Evidence of a person's character or character trait is not admissible to prove that

13

on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(a)(1). The conformity exceptions in Rule 404(a)(2) are, by their terms, limited to criminal cases. *SEC v. Towers Fin. Corp.*, 966 F. Supp. 203, 204 (S.D.N.Y. 1997) (agreeing with SEC's argument that "one cannot be an 'accused' outside of a criminal action"). In a civil case, a party's character may be proved by specific instances of conduct only where character is "an essential element of a charge, claim, or defense." FED. R. EVID. 405(b). The test is exacting: character is essential only where "proof, or failure of proof, of the character trait by itself actually satisfy[ies] an element" of a claim or defense. *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995). The Third Circuit affirmed the exclusion of a civil litigant's character where character was not an essential element of an ordinary claim or defense, so specific-instances proof of that character is impermissible. *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 145 n.2 (3d Cir. 2002); *accord Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536, 541 (S.D.N.Y. 2005) (a party's unrelated prior difficulties are "inadmissible propensity evidence" where character is "not an essential element of any claim or defense").

Elsa Hall's propensity for her own property and financial dealings is not an element of legal malpractice, of conversion, or of any defense to those claims. Her leasing, banking, and power-of-attorney conduct is offered for one purpose only—to suggest that because she engaged in structurally similar dealings, she is the sort of person who would take advantage of her mother, and Samuel Hall therefore should not be blamed for doing the same. That is the classic forbidden propensity inference. To the extent the defense reframes the conduct as "other acts" under Rule 404(b), it fails because first the

probative value of the evidence must be weighed against the danger of prejudice under Rule 403. *United States v. Rich*, 343 F. Supp. 2d 411, 416 (E.D. Pa. 2004) (Rule 403 weighing is a mandatory step before Rule 404(b) evidence may be admitted). Whatever theory the defense advances, the same Rule 403 dangers identified in Part I—confusion, delay, and unfair prejudice—independently require exclusion.

### B. "SHE DID IT TOO" IS NOT A DEFENSE, AND ANY UNCLEAN-HANDS THEORY IS FOR THE COURT, NOT THE JURY

The defense's evident theory in the last trial—that Elsa Hall engaged in comparable conduct, so the Trust should not prevail—is a *tu quoque* argument[1] that, to the extent it is anything, sounds in unclean hands—an equitable defense for the court, not a question for the jury.[2] "Courts are concerned primarily with their own integrity in the application of the clean hands maxim and even though not raised by the parties the court will of its own motion apply it"; courts "act for their own protection and not as a matter of 'defense' to the defendant." *Gaudiosi v. Mellon*, 269 F.2d 873, 881-82 (3d Cir. 1959). Its application "rests within the sound discretion of the trial court," and it reaches only misconduct with "an immediate and necessary relation to the equity" sued upon; a court "will not refuse relief . . . merely because [a party] has engaged in

---

[1] "A retort charging an adversary with being or doing what the adversary criticizes in others." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/tu%20quoque. Accessed July 1, 2026.

[2] The Trustee by no means concedes that her conduct was improper. For example, concerns that Samuel Hall would try to convert his mother's home such as he had done with the Plot 17-7 lease, led her to record a lease against the property so that there would be a claim on the title that would prevent a free-and-clear sale.

misconduct which is unrelated to its claims." *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999). Whether a party's hands are unclean "is a matter to be decided by the Court and not by the jury." *Holmes v. Thew Shovel Co.*, 305 F. Supp. 139, 144 (N.D. Ohio 1969); *Cal-Agrex, Inc. v. Van Tassell*, 258 F.R.D. 340, 348 (N.D. Cal. 2009) (unclean hands "was not an issue properly before the jury") (cleaned up). Because Elsa Hall's unrelated dealings could not support an unclean-hands defense in any event (they bear no "immediate and necessary relation" to the Trust's malpractice and conversion claims), and because such a defense is for the Court, this evidence does not belong before the jury.

### C. EVIDENCE RELEVANT ONLY TO THE FORMERLY-CONSOLIDATED CASE IS INADMISSIBLE

Much of the attack on Elsa Hall in the 2015 consolidated trial was Samuel Hall's affirmative case in his individual claim for intentional infliction of emotional distress in the case formerly consolidated with this case. The trial court said so on the record, describing the defense's cross-examination of Elsa as "for defense in the malpractice case, and also to prosecute your tortious interference case," to which defense counsel agreed, "Yes." [Exh. 2, Day 2, p.85:13–16]. Counsel for Samuel Hall individually likewise explained that "the claims against her relate to . . . intentional emotional distress and intentional interference," so "I need to get into her mind." [Exh. 2, Day 2, p.147:25– 48:2]. And in closing, the defense asked the jury to find that Elsa's conduct "was a cruel and vicious harm . . . beyond decency" and to "award the appropriate damages" [Exh. 4, Day 4, p.56:11–16]—argument so plainly directed at the

16

counterclaim that the Court admonished counsel, "Let's stick to the IIED, your claim." [Exh. 4, Day 4, p.56:8–9].

That claim is not being tried in the new trial. Evidence whose relevance depends on the severed claim is inadmissible at the retrial of the surviving claims. *Cf. Diggs v. Guynup*, 621 F. Supp. 3d 315, 325-26 (N.D.N.Y. 2022) ("evidence relating solely to previously dismissed claims is irrelevant to the issues remaining for trial and is therefore inadmissible"). The point is strongest where, as here, the material was the substance of the severed claim: such evidence is properly excluded under Rules 402 and 403 because of the potential for the evidence to induce a jury to find against a party on its claims on the improper basis that it is a'"bad actor" *Cf. Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 73 F. Supp. 2d 997, 10005 (N.D. Iowa 1999) (concluding that "[t]o the extent that the evidence of 'false marking' and 'false advertising' could somehow be relevant to any claim remaining in this lawsuit, the potential for the evidence to induce a jury to find against Dethmers on its claims on the improper basis that it is a 'bad actor' with respect to marking and advertising is simply too great to allow the evidence to be admitted"); *accord Moore v. Granlund*, 569 F. Supp. 3d 205, 212-13 (M.D. Pa. 2021) (evidence going "solely to establish the [dismissed] conspiracy [claim] is irrelevant and therefore inadmissible"); *Ledford v. Lamartz*, 462 F. Supp. 3d 905, 909-10 (N.D. Ind. 2020) (dismissed claim evidence excluded to avoid inefficient "mini trials").

**Requested order (MIL II):** an order precluding Defendants from (1) offering

character or reputation evidence, or evidence of specific instances of Elsa Hall's conduct (including her leasing, banking, and power-of-attorney dealings), to suggest she acted in conformity with a bad character; (2) arguing that Elsa Hall's own alleged conduct bars or diminishes the Trust's claims (*tu quoque* / unclean hands), that theory being for the Court and unsupported on these facts; and (3) offering evidence or argument relevant only to the dismissed No. 3:13-cv-00095 emotional-distress counterclaim—while confirming that the Trust does not seek to bar cross-examination of Elsa Hall permitted by Rules 607, 608(b), and 613.

### III.    THE COURT SHOULD PRECLUDE APPEALS TO LOCAL OR REGIONAL "US-VERSUS-OUTSIDER" BIAS

In closing argument in 2015, defense counsel told the jury: "What we want is justice. And sometimes justice is just us." [Exh. 4, Day 4, p.41:12–14]. That line did not stand alone. It capped a sustained theme casting Samuel Hall as the native son and Elsa Hall as the outsider who took their mother away—that Ethlyn "never left the Virgin Islands . . . was born here in 1916 . . . [and Elsa] is going to move her to a place where she has no relatives" [Exh. 4, Day 4, p.37:23–38:9]—and that Elsa "hid her away in Florida . . . a strange place to her" [Exh. 1, Day 1, p.23:1–3]. The Trust moves to preclude any reprise of that theme at the retrial.

Federal law governs the propriety of closing argument in this Court. *Edwards v. City of Philadelphia*, 860 F.2d 568, 574 (3d Cir. 1988). While advocacy "need not be devoid of passion," "there must be limits to pleas of pure passion and . . . restraints against blatant appeals to bias and prejudice." *Draper v. Airco, Inc.*, 580 F.2d 91, 95

(3d Cir. 1978). "[A]ppeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them," *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 240 (1940), and the same rule should apply to appeals to geographic/local-origin bias. An appeal to local identity—favoring the local party and casting the opponent as an outsider who came in and did harm—is a species of class prejudice, and the Third Circuit has said so most directly in a Virgin Islands case: "an appeal to local prejudice against foreign defendants is never permissible even where punitive damages are sought." *Herman v. Hess Oil V.I. Corp.*, 524 F.2d 767, 772 (3d Cir. 1975). The closest factual analog condemns precisely the theme at issue here: a summation urging the jury, as "the collective conscience of this community," to send word that "when these foreign operators come into this port and destroy one of our citizens" they will not be tolerated was improper summation. *Foster v. Crawford Shipping Co.*, 496 F.2d 788, 792-93 (3d Cir. 1974). Justice is not dependent upon which party the community would rather claim as its own, any more than it depends upon "the wealth or poverty of the parties." *Draper*, 580 F.2d at 95.

The "sometimes justice is just us" pun was an invitation to the jurors to identify with "us"—the local family—and against the outsider. The Court has "broad discretion" and "wide discretion in matters relating to the conduct of counsel during trial" to prevent it. *Dunn v. HOVIC*, 1 F.3d 1371, 1377 (3d Cir. 1993) (*en banc*); *Forrest v. Beloit Corp.*, 424 F.3d 344, 351 (3d Cir. 2005). And the motion in limine is an accepted vehicle for an advance ruling: courts routinely preclude, before trial, appeals to jurors' identity-

based self-interest as a form of class prejudice. *Doe v. Loyalsock Twp. Sch. Dist.*, No. 2026 WL 1147842, at *8 (M.D. Pa. Apr. 28, 2026) (granting a motion in limine to preclude "taxpayer impact" argument because "[a]ppealing to the sympathy of jurors through references to financial disparity is improper" and "appeals to class prejudice are highly improper").

Two framing points, drawn candidly from the authorities. First, the strongest ground for this order is the Court's inherent authority over the conduct of counsel and the improper-argument doctrine, not Rule 403—which governs evidence and which the Third Circuit disfavors as a basis for pretrial exclusion. *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829, 859 (3d Cir. 1990). The Trust cites Rule 403 as reinforcement, not as the spine. Second, the Trust does not ask the Court to bar legitimate references to the parties' backgrounds or residences where genuinely relevant, nor—if punitive damages remain in the case—to bar the permissible argument that a punitive award serves "as a deterrent and an example to the community." *Herman*, 524 F.2d at 772. The line the Trust asks the Court to draw is between those permissible references and a naked appeal to local loyalty of the "justice is just us" variety, which *Herman* holds is "never permissible even where punitive damages are sought." *Id.*

**REQUESTED ORDER (MIL III):** an order precluding Defendants and their counsel from arguing, suggesting, or eliciting testimony inviting the jury to favor Samuel Hall as a local Virgin Islander or to disfavor Elsa Hall as an out-of-territory "outsider," including any reprise of the "sometimes justice is just us" theme.

20

## CONCLUSION

For the foregoing reasons, the Trust respectfully requests that the Court grant this omnibus motion in limine and enter the three orders described above, confining the retrial to the surviving claims and the evidence properly bearing on them.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.**
Attorneys for Elsa Hall, as Personal
Representative of the Estate of
Ethlyn Louise Hall and as Successor
Trustee of The Ethlyn Louise Hall
Family Trust

Dated: July 13, 2026          /s/ Andrew C. Simpson"
                             Andrew C. Simpson (VI Bar 451)
                             2191 Church Street, Suite 5
                             Christiansted, VI 00820
                             (T) 340-719-3900