**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| ELSA HALL, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ETHLYN LOUISE HALL AND AS SUCCESSOR TRUSTEE OF THE ETHLYN LOUISE HALL FAMILY TRUST, <br><br> PLAINTIFF, <br><br> V. <br><br> SAMUEL H. HALL, JR. AND HALL & GRIFFITH, P.C., <br><br> DEFENDANTS. | CIVIL NO. 3:11-CV-54 |

**PLAINTIFF'S TRIAL BRIEF**

## I. INTRODUCTION

Distilled to its essence, this is a case about a lawyer who took his elderly mother's money and property and kept it. Samuel H. Hall, Jr. served as Ethlyn Hall's attorney for more than twenty years. Using powers of attorney he drafted for himself, he leased his mother's most valuable parcel, collected $1,070,000 in lease proceeds as her agent, and deposited that money into accounts in his own name. He used it to finish the house he was building on the parcel his mother had given him and to build a palatial rental home for his niece—while the cottage his mother's lease actually required went unbuilt, his sister's cottage was abandoned, and his mother received nothing. He never accounted for a dollar of it. And when the tax consequences came due, he told his mother—in advice he admits he was not competent to give—that she alone owed a $1,070,000 capital-gains tax, and reported that figure to the taxing authority on a Form 1099-S his firm prepared.

Those facts give rise to two independent wrongs, either of which supports full recovery.

**Conversion.** First, and most directly, Samuel Hall converted his mother's property. He exercised dominion over money and property that were hers, inconsistent with her rights, and applied them to his own benefit and others'. This claim needs no expert and no proof of a professional standard of care; it turns on who owned the money and what Samuel Hall did with it. On those points the Estate begins far down the field: a final Florida judgment has already established that the roughly one million dollars passed through Samuel Hall's hands, that none of it reached his mother's account, and that the large majority of it went to build his house and his niece's. The powers of attorney do not answer the conversion claim—the Estate concedes his mother's signatures but not the propriety of what he did with the authority—and Defendants' contention that Ethlyn "received value" in improvements to other people's houses is a jury question the established facts sharply undercut.

**Legal malpractice.** Second, and independently, Samuel Hall committed legal malpractice. As his mother's lawyer he negligently failed to advise her of the tax consequences of the transactions he structured and to refer her to a tax professional, mischaracterized ordinary lease income as a capital gain, and issued an erroneous Form 1099-S—negligence that exposed her estate to tax, penalties, and interest. That claim carries the reinstated tax-liability damages.

**Posture.** In January 2015 these claims were tried together with a separate emotional-distress case Samuel Hall had brought against his sister individually (No. 3:13-cv-00095). On the morning of jury selection the Court dismissed the Estate's legal-

malpractice and conversion claims and the tax-liability damages within its other counts; the jury then heard only the breach-of-fiduciary-duty, fraud, and unjust-enrichment claims and returned a defense verdict. On remand from the United States Supreme Court, the Third Circuit vacated the dismissal of the legal-malpractice and conversion claims (and the tax-liability damages) and remanded them for trial. The two cases are no longer consolidated, and the breach-of-fiduciary-duty, fraud, and unjust-enrichment claims are not retried. This case is therefore not a referendum on Ethlyn Hall's mental capacity—a final Florida judgment conclusively establishes she had it—nor on Elsa Hall's character, nor on the family dispute that drove the now-severed 2013 case.

Two threshold matters frame the evidence. First, a final Florida probate judgment establishes a set of facts the Estate need not prove and Defendants may not contest (Part III). Second, the 2015 defense verdict does not preclude these claims—legal malpractice and conversion are distinct torts from breach of fiduciary duty, they were never tried, and the Third Circuit reinstated them (Part IV).

## II. STATEMENT OF FACTS

Ethlyn Hall owned Parcel 17-7, Estate Peter Bay, St. John, and had gifted adjacent parcels to her children and grandchildren—Parcel 17-5 to Samuel, Parcel 17-4 to her daughter Phyllis, and Parcel 17-6 to her granddaughter Yassin. Samuel Hall served as her attorney for over twenty years. (Answer ¶18; Probate Order ¶9.)

In January 2003, acting as Ethlyn's attorney, Samuel Hall drafted a fifty-year ground lease of Parcel 17-7 to the Andrews St. John Trust, under which the tenant was

to build, as prepaid rent, a cottage for Yassin (17-6) and a cottage for Phyllis (17-4). Beginning in 2006, Samuel Hall took over management of the construction, and the construction funds were deposited into a personal checking account in his name. (Answer ¶¶30–35 admit the lease and its terms.)

In August 2007, acting as Ethlyn's attorney, Samuel Hall prepared and had his mother sign two documents a day apart. The first (August 3, 2007) authorized him to halt construction of Phyllis's cottage and to "reprogram" that money toward his own house on Parcel 17-5; it recited a quid pro quo—that he would "complete his home in order to expedite his assistance of me (Ethlyn) in my future care on St. John"—and Samuel Hall asserts he alone witnessed his mother sign it, with no other witnesses. The second (August 4, 2007) assigned Ethlyn's entire landlord interest in the lease to Samuel Hall and gave him a power of attorney to renegotiate it; that document was not notarized and was witnessed only by two men who performed yard work for Samuel Hall. A year later (August 13, 2008), Ethlyn signed a further power of attorney in his favor, notarized by his law partner, Marie Thomas-Griffith. (Answer ¶¶20–21, 38–39.) The Estate concedes execution of these instruments but not the propriety of the transactions.

Then, on December 2, 2008, Samuel Hall—signing as Ethlyn's attorney-in-fact—renegotiated the ground lease into a seventy-five-year lease to the Talton Family Trust, under which $800,000 was paid to "Samuel H. Hall, Jr. as Landlord's agent and attorney in fact." Other than Samuel Hall's own self-serving testimony, there is no evidence that Ethlyn was aware of the renegotiation of this lease or of the $800,000

payment to him. (Answer ¶83.)

All told, Samuel Hall collected $1,070,000 on Ethlyn's behalf ($270,000 in early-termination of the 50-year lease and $800,000 under the 75-year lease). Andrews and Talton wire-transferred the lease payments into a FirstBank checking account in Samuel Hall's own name—an account he had "cleared … of my funds" and into which he "deposited all the funds that Jack Andrews sent to me." From that same account he disbursed the money to build the houses. By his own account, of the $1,070,000, roughly $603,000 (later, $535,000-plus) went to build Yassin's house on Parcel 17-6, roughly $260,000–$300,000 to his own house on Parcel 17-5, and $207,000 to Phyllis—and, as he conceded, "these funds were used to pay for rental homes for … principally for Yassin and yourself." None of it was paid into Ethlyn's account. (Hall, Sam Depo 2013-12-30, p.27:22–28:9; p.50:24–51:5; Hall, Samuel Depo 2014-04-28, p.368:6–11; FL Trial, p.389:10–24; Probate Order ¶11; Answer ¶81.) The cottage the lease called for on Yassin's parcel became a palatial rental home; Phyllis's cottage was never built.

Samuel Hall never advised Ethlyn of the tax consequences of these transactions or referred her to a tax professional. In a February 1, 2011 letter he told her the leases had generated a $1,070,000 capital gain taxable at 15%, and his firm issued a 2010 Form 1099-S reporting $1,070,000 in gross proceeds—tax advice he admits he lacked the expertise to give, and which mischaracterized ordinary lease income as capital gain. (Answer ¶¶50, 52 admit the letter and the 1099-S; Doc. 495.)

Samuel Hall also took $60,000 allocated for the payment of Yassin Hall's tax

obligation owed to Ethlyn and placed it in his law firm's trust account under the notation "Ethlyn Hall Lease Tax," then withdrew $25,000 of it—without Ethlyn's permission—and spent it on improvements to Yassin's house. He has continued to exercise dominion over the remaining $35,000 and has failed to account for it, even after the firm closed its doors. He was separately holding $69,408.85 that he acknowledged he owed Ethlyn for his own share of the tax obligation for improvements on his vacation house, and has continued to exercise dominion over those funds rather than paying them to Ethlyn or, later, the Estate and Trust.

### III. FACTS CONCLUSIVELY ESTABLISHED BY THE FLORIDA PROBATE JUDGMENT

After a two-week trial, the Florida probate court denied Samuel and Yassin Hall's petition to revoke Ethlyn's will and trust, and the Florida Third District Court of Appeal affirmed. *Hall v. Hall*, 190 So. 3d 683 (Fla. 3d DCA 2016). Under 28 U.S.C. § 1738, that judgment is entitled to the preclusive effect Florida law would give it, and Defendants are collaterally estopped from contesting the probate court's findings. The following are therefore established and need not be proven:

1. Ethlyn Hall had testamentary and mental capacity, and was free of undue influence, when she executed the November 10, 2010 trust and her later will. Probate Order ¶¶7, 13–27.

2. Samuel Hall's legal representation of Ethlyn included negotiating the long-term lease and its extension, which "resulted in upfront payments of approximately one million dollars." Probate Order ¶9.

3. None of that approximately one million dollars was paid into Ethlyn's

bank account; the large majority went toward building homes on the parcels Ethlyn had gifted to Samuel (17-5) and Yassin (17-6). Probate Order ¶11.

## IV.    THE 2015 DEFENSE VERDICT DOES NOT PRECLUDE THE SURVIVING CLAIMS

Defendants are expected to argue that the 2015 jury's rejection of the breach of fiduciary duty, fraud, and unjust enrichment claims collaterally estops the malpractice and conversion claims. It does not. This argument was fully briefed and rejected below (Docs. 495, 497), and the Third Circuit's reinstatement of these claims is law of the case.

### A.    CLAIM PRECLUSION FAILS—THE SURVIVING TORTS HAVE DIFFERENT ELEMENTS.

Legal malpractice in the Virgin Islands requires (1) an attorney-client relationship giving rise to a duty, (2) breach, (3) a causal connection between the negligent conduct and the injury, and (4) damages. *Reynolds v. Rohn*, 70 V.I. 887, 895 (2019). Breach of fiduciary duty requires (1) a fiduciary relationship, (2) breach of the duty it imposes, (3) harm, and (4) causation. *Arvidson v. Buchar*, 72 V.I. 638, 645 ¶12 (Super.  2020). The two are not the same tort: malpractice implicates a duty of care (negligence), while breach of fiduciary duty implicates a duty of loyalty and honesty requiring "a more culpable state of mind than the negligence required for malpractice." *Prentis Family Found., Inc. v. Barbara Ann Karmanos Cancer Inst.*, 266 Mich. App. 39, 47 (2005); B*everly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 56–57 (1998). The Estate can recover for malpractice by proving negligence without

proving any breach of fiduciary duty. Conversion—"an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel," *Penn v. Mosley*, 67 V.I. 879, 898 n.8 (2017)—shares no element with breach of fiduciary duty, fraud, or unjust enrichment; a fiduciary relationship is not even integral to it.

### B.    ISSUE PRECLUSION FAILS—THE 2015 VERDICT WAS CLAIM-LEVEL, NOT ELEMENT-LEVEL.

The jury answered a single question per claim ("Did Samuel Hall breach a fiduciary duty …?") rather than the four elements separately. Consequently, "there is no way of knowing which element … it found lacking." Docs. 495, 497. The verdict form confirms it: duty-existence was not submitted as a separate interrogatory—the elements were folded into one combined "breached a fiduciary duty" question, and a "No" answer is equally consistent with a finding of no relationship, no breach, or the amended gift/overreaching avoidance. No specific element finding carries over to the distinct malpractice and conversion elements.

### C.    LAW OF THE CASE.

The Third Circuit implicitly rejected Defendants' "conversion is redundant to breach of fiduciary duty" theory by reinstating the conversion claim; this Court is bound by that reinstatement. Doc. 497.

### D.    THE FIDUCIARY BREACH CONDUCT REMAINS ADMISSIBLE AS EVIDENCE OF NEGLIGENCE.

The 2015 "no breach" answer did not adjudicate the conduct proper (one cannot

8

tell which element failed), so Samuel Hall's self-dealing, conflict, failure to disclose, and failure to account remain fully admissible as evidence of the standard of care under the malpractice claim and as evidence of dominion under the conversion claim.

## V. THE SURVIVING CLAIMS

### A. COUNT III—LEGAL MALPRACTICE

**Elements:** (1) an attorney-client relationship giving rise to a duty; (2) breach of that duty; (3) causation; (4) damages. *Reynolds v. Rohn*, 70 V.I. 887, 895 (2019).

**DUTY:** The attorney-client relationship is admitted: Samuel Hall served as Ethlyn's attorney for over twenty years and acted as her lawyer in each transaction at issue. (Answer ¶¶18, 27, 35, 39; Probate Order ¶9.) The scope of the duty is measured by the professional-conduct rules in force during the 2007–2011 conduct—the ABA Model Rules of Professional Conduct (2002 version), adopted in the Virgin Islands via V.I. Sup. Ct. R. 203(a) and applied in this District via LRCi 83.2—including Model Rules 1.14 (client with diminished capacity), 1.8(a) (business transactions with a client), and 1.7 (conflict of interest).

**BREACH:** Each of the following is negligent independent of any fiduciary breach:

(i) the erroneous 2010 Form 1099-S reporting $1,070,000 in gross proceeds (Answer ¶52.); (ii) the failure to advise Ethlyn of the tax implications of the 75-year lease and to refer her to a tax professional; and (iii) the February 1, 2011 letter, in which Samuel Hall gave tax advice he admits he lacked the expertise to give and mischaracterized ordinary lease income as a 15% capital gain—the admission itself

9

establishing negligence. Doc. 495. Beyond the tax handling, Samuel Hall breached the standard of care by (iv) structuring and renegotiating the leases under an undisclosed conflict of interest and directing the proceeds to himself—without advising Ethlyn to obtain independent counsel, disclosing the conflict, or obtaining her informed consent—conduct that Model Rules 1.7 and 1.8(a) place below the care a competent attorney owes. This is a duty-of-care (negligence) failure, offered independent of the breach-of-fiduciary-duty theory the 2015 jury rejected; because the verdict was claim-level, the same conduct may be re-offered to prove the distinct malpractice standard of care (Part IV).

**CAUSATION AND DAMAGES:** This is not litigation malpractice, and the "case-within-a-case" method has no application here. That method—under which a plaintiff must prove she would have prevailed in an underlying lawsuit but for her lawyer's neglect—is a device the Virgin Islands has applied only in the impairment-to-litigation setting. *Baptiste v. Rohn*, 2016 WL 1261072, at \*3–4 (D.V.I. Mar. 29, 2016); *Moorehead v. Miller*, 102 F.R.D. 834, 838 (D.V.I. 1984). Samuel Hall's malpractice was not the loss of a lawsuit; it was negligent tax advice and reporting in the course of advising and representing his client. For advisory and transactional malpractice, causation is the ordinary reliance-based but-for question—whether the client would have avoided the injury had competent advice been given—provable like any other fact by documents, admissions, and circumstantial evidence, not by a trial within a trial. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 53 cmt. b; *Hughes v. Consol-Pa. Coal Co.*, 945 F.2d 594, 617 (3d Cir. 1991). The Virgin Islands Supreme Court's most recent

malpractice decision confirms the point: it resolved causation not through any trial-within-a-trial but by asking whether the client suffered a net loss. *Reynolds v. Rohn*, 70 V.I. 887, 896–98 (2019).

Here, moreover, the injury flows directly from the negligent acts themselves. The erroneous 2010 Form 1099-S and the February 1, 2011 letter mischaracterizing ordinary lease income as a 15% capital gain produced the wrong tax treatment and the resulting tax, penalties, and interest—irrespective of how Ethlyn might have restructured the transactions with competent advice. Defendants' negligence thus caused the Estate/Trust to incur tax, penalties, and interest it would not otherwise owe, and impaired the value of Parcel 17-7. The Estate's tax-damages expert, Kenneth Heverly, quantified that liability as of the 2015 trial; at retrial his testimony will simply extend the interest calculation forward to the date of trial. See Part V.C (tax-liability damages).

**DAMAGES—THE PROCEEDS OF THE LEASE ARE RECOVERABLE UNDER EITHER THE MALPRACTICE OR CONVERSION THEORIES:** The malpractice caused two distinct injuries. The first is the tax, penalties, and interest just described. The second is the loss of the lease proceeds themselves: Samuel Hall's negligent, conflicted handling of the leases and proceeds fell below the standard of care and caused Ethlyn to lose the $1,070,000, and that sum is recoverable as malpractice damages in the alternative to the conversion claim—and, unlike conversion, this recovery does not require proof that Ethlyn retained ownership of the funds as a chattel. The Estate accordingly seeks a single recovery of the $1,070,000, reachable through either the conversion claim (Part

V.B) or this malpractice claim, with the tax-liability damages (Part V.C) separate and additional.

Standard of care and breach are established through the Estate's legal ethics expert, David Nissman.

### B.    COUNT IV—CONVERSION OF PROPERTY

**ELEMENTS:** Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Penn v. Mosley*, 67 V.I. 879, 898 n.8 (2017). Money is subject to conversion when it is a specific, identifiable fund rather than a mere general debt, and commingling the fund in the wrongdoer's own account does not defeat the claim—it shifts the analysis to tracing. Here the lease proceeds Samuel Hall collected were a specific, identifiable sum ($1,070,000) he received as Ethlyn's agent and traced himself (below).

Samuel Hall's own admissions trace the funds. Although the lease proceeds were commingled in his FirstBank account, Samuel Hall himself traced them: he admits Andrews and Talton wired the payments into his own checking account, that he "deposited all the funds … into that account," and—critically—he allocated the $1,070,000 by beneficiary, testifying that roughly $603,000/$535,000-plus built Yassin's house, roughly $260,000–$300,000 his own, and $207,000 was Phyllis's, and that "these funds were used to pay for rental homes for … principally for Yassin and yourself." (Hall, Sam Depo 2013-12-30, p.27:22–28:9; p.50:24–51:5; FL Trial, p.389:10–24; Hall, Samuel Depo 2014-04-28, p.368:6–11.)

There were four distinct money flows.

- The $800,000 (and the balance of the $1,070,000). Samuel Hall collected the lease proceeds as Ethlyn's agent and deposited them into his personal account; none was paid to Ethlyn, and none was authorized to be diverted to himself. (The Probate Order at ¶11 establishes none reached her account; Answer ¶83 admits the $800,000 was payable to Samuel Hall as attorney-in-fact.)

- The Yassin overbuild. The 50-year lease obligated the tenant to build a cottage for Yassin (17-6); Samuel Hall—acting as both construction manager and attorney—allowed the lease proceeds to fund a far larger, palatial home, beyond the cottage the lease called for and beyond any wish Ethlyn expressed.

- The reprogramming. The August 3, 2007 letter diverted the funds designated for Phyllis's cottage (17-4) toward Samuel Hall's own house (17-5).

- Beyond the lease proceeds, Samuel Hall exercised dominion over two further sums of Ethlyn's money. First, of the $60,000 he set aside in his firm's trust account (labeled "Ethlyn Hall Lease Tax") for Yassin's tax obligation owed to Ethlyn, he withdrew $25,000 without Ethlyn's permission and spent it on improvements to Yassin's house, and he continues to hold and control the remaining $35,000, unaccounted for even after his law firm closed. Second, he continues to hold $69,408.85 he acknowledged he owed Ethlyn for his own share of the tax obligation on improvements to his vacation house, rather than turning it over to Ethlyn or the Estate. Each is an intentional exercise of dominion over Ethlyn's property inconsistent with her rights—the $25,000 converted outright,

13

and the $35,000 and $69,408.85 wrongfully detained.

Defendants are expected to argue that the Estate cannot prove ownership or an immediate right to possession because Ethlyn made a "completed gift" and retained only a reversionary interest. The argument conflates two different things Ethlyn owned. The completed gift was of the cottages—the buildings the 50-year lease obligated the tenant to construct on the parcels Ethlyn had given Phyllis (17-4) and Yassin (17-6). It was not a gift of the lease proceeds. Those proceeds were Ethlyn's rents as Landlord, and Defendants admit the $800,000 was payable to "Samuel H. Hall, Jr. as Landlord's agent and attorney in fact" for Ethlyn. (Answer ¶83.) Money a lawyer-agent collects on his principal's behalf remains the principal's. *Ross v. Hodge*, 58 V.I. 292 (2013) proves the point by contrast: there the plaintiff had quitclaimed his entire interest in the property before it was sold, so he "had no property with which (the defendant) could have interfered so as to constitute a conversion"; that is why the conversion claim failed. *Id*. at 309. Ethlyn conveyed no such interest in her rents—she retained them, and Samuel Hall held them only as her agent.

Nor does the Estate's own liability expert supply the defense. David Nissman is a legal ethics expert who testified that he "really didn't look at the conversion issue at all," that he "was not asked to say whether there were bona fide causes of action," and that whether "there is a conversion in the tort sense" is "judge stuff … a judge's instruction for the jury." (Nissman Depo 2026-06-01, p.60, 67.) His agreement, on cross-examination, to defense counsel's "completed gift" and "reversionary interest" characterizations was lay assent to a lawyer's leading questions on real-property

14

law—a subject Nissman expressly disclaimed any expertise in (*id.*, p.12–13)—not expert opinion on ownership. His "gave up any right for her personal receipt of any of the rentals" concession was, moreover, expressly limited by the reason he gave for it: "because … all of the money to be paid was to go to building the two houses." (*id.*, p.35.) That concession does not reach the proceeds Samuel Hall diverted to his own house (17-5) or to the palatial overbuild beyond the cottage on Yassin's parcel (17-6)—the very property the Estate says was converted. Asked directly, Nissman testified he did believe a conversion occurred: "if in fact there wasn't a knowing consent to this reprogramming, then there is $800,000.00 of a benefit that went to somebody who may not (have) intended to have that." (*id.*, p.61.)

### C. TAX-LIABILITY DAMAGES (RECOVERABLE ON THE MALPRACTICE CLAIM)

The tax, penalties, and interest caused by Samuel Hall's failure to structure the leases properly and to advise Ethlyn when and how the lease income was taxable are recoverable as damages on the legal-malpractice claim (Count III). These damages were dismissed as unripe in 2015 and reinstated by the Third Circuit. Kenneth Heverly's damages opinion quantified the liability as of the 2015 trial; his retrial testimony will simply extend the interest calculation forward to the date of trial.

### D. COUNT VIII—ACCOUNTING

Count VIII seeks an accounting of the funds Samuel Hall collected and held as Ethlyn's agent and never accounted for: the $1,070,000 in lease proceeds, together with the tax-allocated funds he still controls—the $35,000 remaining in the "Ethlyn Hall Lease Tax" balance in his firm's trust account and the $69,408.85 he acknowledged

15

owing Ethlyn—which he has continued to hold even after his firm closed its doors. The equitable claims (Counts VIII–X) are, as Defendants' counsel conceded before the Third Circuit, "claims for relief rather than independent causes of action." Docs. 495 at 4 n.4; 497 at 4 n.4.

The duty to account does not depend upon breach of fiduciary duty; it is an incident of the agency itself. An agent "has a duty to keep and render to his principal an account of money or other things which he has received or paid out." RESTATEMENT (SECOND) OF AGENCY § 382; *Dresden v. Willock*, 518 F.2d 281, 290 (3d Cir. 1975). An attorney owes the same duty to safeguard and account for client funds under Model Rule of Professional Conduct 1.15. That duty is triggered by the relationship and the receipt of funds—both admitted here—and it is breached by the refusal to account.

Applying that duty, an equitable accounting requires a fiduciary or agency relationship, a breach of the duty arising from it, and gross receipts the fiduciary received. *Gov't Guarantee Fund v. Hyatt Corp.*, 955 F. Supp. 441, 466 (D.V.I. 1997); *Gov't Guarantee Fund v. Hyatt Corp.*, 5 F. Supp. 2d 324, 332–33 (D.V.I. 1998). The requisite breach is supplied by Samuel Hall's wrongful retention and diversion of the funds and his failure to keep and render accounts—conduct that is the subject of the surviving conversion claim and of the agent's § 382 duty on which the *Hyatt* court separately held the agent liable, *id.* at 333—not the duty of loyalty the 2015 jury was asked about (Part IV). Once the plaintiff establishes the relationship and the amount of gross receipts, the burden shifts to the defendant to prove what deductions or proper disposition reduce the sum owed, and funds left unaccounted for are presumed

16

misappropriated. *Id.* at 332–33. That gross receipts amount is established and admitted here—$1,070,000—so the precondition that defeated the first accounting request in *Hyatt* (there, the plaintiff could not establish the dollar amount) is satisfied. And because the funds were commingled in an account only Samuel Hall could reconstruct, there is no adequate remedy at law—the prerequisite to an equitable accounting, which the close attorney-agency relationship here independently satisfies. *Id.* at 334–35. Samuel Hall, who kept no accounting and refused Ethlyn's written demands, cannot carry the shifted burden. This is materially similar to *Dresden v. Willock*, 518 F.2d 281, 290 (3d Cir. 1975), where an attorney-agent who commingled $564,000 of the principal's funds bore "the burden of proof as to the propriety of the expenditures."

Nor is the accounting barred by the 2015 verdict. Because it is a remedy for the surviving claims rather than an independent cause of action (Docs. 495 at 4 n.4; 497 at 4 n.4), it requires no proof of breach of fiduciary duty; and Samuel Hall's continuing refusal to account—after Ethlyn's written demands, and even after his firm closed—is an ongoing breach the 2015 verdict did not reach.

The accounting itself is for the Court, because the duty to account arises from the attorney-agency relationship and is itself equitable. *Dardovitch v. Haltzman*, 190 F.3d 125, 133 n.1 (3d Cir. 1999); *Hamed v. Yusuf*, 69 V.I. 168, 179 (Super. 2017). To the extent the money-tracing facts overlap the legal claims for conversion and malpractice, those facts will be found by the jury on those claims, and the Court's accounting will

follow from the jury's findings. *Ross v. Bernhard*, 396 U.S. 531 (1970); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959).

### E.    COUNT IX—CONSTRUCTIVE TRUST

Count IX seeks a constructive trust on the property and proceeds Samuel Hall wrongfully obtained and used for his own benefit. In the Virgin Islands a constructive trust is an equitable remedy imposed to prevent unjust enrichment; the V.I. Supreme Court "award(s)" it "as relief based upon a finding of unjust enrichment." *Victor v. Todman*, 79 V.I. 381 (2024). The operative framework—applied by the V.I. Supreme Court in *Ross v. Hodge*, 58 V.I. 292, 303–07 (2013)—asks whether a confidential relationship was abused through inequitable conduct, producing unjust enrichment, and requires the plaintiff to trace the wrongfully obtained property or its proceeds into specific property. The confidential-relationship element is satisfied because, as Ethlyn's attorney of more than twenty years, Samuel Hall "gained the confidence of" his client and "purport(ed) to act or advise with (her) interest in mind." *Francois v. Francois*, 599 F.2d 1286, 1291–92 (3d Cir. 1979). Whether a confidential relationship exists is ordinarily a question of fact, but the admitted two-decade attorney-client relationship readily meets that standard. The inequitable conduct is Samuel Hall's self-dealing conversion of the lease proceeds; and the unjust enrichment is his use of those proceeds to build his own house on Parcel 17-5 and the palatial home on 17-6. Tracing is supplied by Samuel Hall's own allocation of the $1,070,000 (Part V.B).

18

### F.      COUNT X—EQUITABLE LIEN (PARCEL 17-5)

Count X seeks an equitable lien on Parcel 17-5—the parcel on which Samuel

Hall built his own house using the converted/reprogrammed lease proceeds—for all

sums so invested, and foreclosure of that lien (a V.I. court may foreclose an equitable

lien, 28 V.I.C. § 531).

The converted proceeds are traceable to the Parcel 17-5 construction. Although

the lease proceeds were commingled in Samuel Hall's FirstBank account, the record

traces them into the house he built on Parcel 17-5 two ways. First, Samuel Hall's own

allocation of the $1,070,000 attributes roughly $260,000 to $300,000 to that house, and

he admitted the FirstBank account was the one "you used to disburse funds for the

construction of … your house." Second, the August 3, 2007 letter reprogrammed the

funds designated for Phyllis's cottage on Parcel 17-4 to that same construction. The

commingling does not defeat the lien; the tracing is supplied by the account records

and Samuel Hall's own admissions. (Hall, Sam Depo 2013-12-30, p.28:7–9; Hall,

Samuel Depo 2014-04-28, p.368:6–11; the 8/3/07 reprogramming letter (Doc. 1-4).)

## VI. ANTICIPATED DEFENSES

### A. COLLATERAL ESTOPPEL FROM THE 2015 VERDICT.

As addressed in Part IV, above,  the surviving torts have different elements and

the claim-level verdict decided no element common to them. Thus, this defense fails.

### B. UNCLEAN HANDS / "SHE DID IT TOO."

Defendants contend that the Estate comes to court with unclean hands. This

defense is foreclosed by the Florida judgment and, in any event, is for the Court, not the jury. The Florida judgment rejected the undue-influence theory and upheld capacity (Probate Order ¶7, ¶¶13–27), so the predicate for any unclean-hands defense premised on Elsa's alleged influence over the instruments is precluded; and unclean hands reaches only misconduct with an "immediate and necessary relation" to the Estate's claims, which Elsa's unrelated dealings lack.

### C.    STATUTE OF LIMITATIONS.

The surviving claims are timely. Legal malpractice in the Virgin Islands carries a two-year period if pled in tort (5 V.I.C. § 31(5)(A)) and a six-year period if pled in contract (§ 31(3)(A)). *Simon v. Joseph*, 59 V.I. 611 (2013). A non-force conversion claim carries the two-year period of § 31(5)(A). *James v. Henry*, 3 V.I. 273, 275–76 (D.V.I. 1957).

Defendants' contention that the claims accrued when the 2003 and 2008 leases were signed misidentifies the negligence. The malpractice the Estate presses consists of the 2010 Form 1099-S and the February 1, 2011 letter giving affirmatively wrong tax advice—discrete negligent acts committed within two years of the May 9, 2011 complaint, not a mere "quantification" of the 2008 transaction. In any event, Virgin Islands law applies a discovery rule: a malpractice claim accrues only when the client knew or, with reasonable diligence, should have known of the injury and its cause. *Moorehead v. Miller*, 102 F.R.D. 834, 838 (D.V.I. 1984); *Charleswell v. Chase Manhattan Bank*, 308 F. Supp. 2d 545, 566–67 (D.V.I. 2004). Ethlyn learned of the

2008 renegotiation and the $800,000 payment only in approximately March 2011. And the Virgin Islands recognizes a continuing-violation doctrine, under which the period does not run while at least one wrongful act within the limitations window furthers a continuing course of wrongful conduct. *Brouillard v. DLJ Mortg. Capital, Inc.*, 63 V.I. 788, 796 (2015). Samuel Hall's ongoing misuse of the lease proceeds and his refusal to account are continuing wrongful acts, not merely lingering effects of the 2007–08 transactions.

### D.    ABSENCE OF WRONGDOING / "THE IMPROVEMENTS WERE THE VALUE ETHLYN WANTED."

This is a merits dispute for the jury; the Estate's proof (Part V) and the established Florida findings (Part III) answer it.

### E.    ETHLYN HALL'S DEATH DOES NOT DEFEAT PROOF OF CAUSATION OR RELIANCE.

Defendants argue that because Ethlyn Hall died in 2012 without giving preserved testimony, the Estate cannot prove she relied on Samuel Hall's advice or would have acted differently, and so cannot carry its causation burden. The argument fails on the law and on this record.

First, it does not touch the conversion claim at all. Conversion turns on ownership and Samuel Hall's exercise of dominion over the proceeds—not on anything Ethlyn "would have done differently"—and the case-within-a-case causation method Defendants borrow from litigation malpractice has no application to an intentional tort.

Second, as to malpractice, reliance and causation need not be proved by the client's own testimony. The Virgin Islands has no Dead Man's Statute: V.I. R. Evid. 601 makes every person competent to testify and omits the state-law-deference clause of its federal counterpart, and the only probate-specific analog, 15 V.I.C. § 395, does not reach a malpractice action; in this District, Federal Rule of Evidence 601's state-law clause is therefore inert for want of any V.I. competency bar to import. Reliance and causation are questions of fact, *Moorehead v. Miller*, 102 F.R.D. 834, 838 (D.V.I. 1984), and like any fact may be established by documentary evidence, by Samuel Hall's own admissions (party-opponent statements under Fed. R. Evid. 801(d)(2)), and by circumstantial proof; no rule requires the deceased client's own testimony. Here the proof is largely documentary and comes from Samuel Hall himself—the February 1, 2011 letter, the Form 1099-S, and his deposition admissions that he handled every transaction and gave tax advice he concedes he was not competent to give. No expert is needed to supply Ethlyn's reliance; the documents and Samuel Hall's admissions do.

Third, to the extent Samuel Hall's own failure to keep records or to account has widened any evidentiary gap, the factfinder may view the weaker evidence with distrust where stronger evidence was within his power to produce. 5 V.I.C. § 740(6).

Fourth, and in the alternative, to the extent Samuel Hall's own conduct has made it impossible for the Estate to prove any element of causation, the burden shifts to him to disprove it. Where an attorney's negligence makes it impossible, as a practical matter, for the client to prove causation, the sounder rule places the risk on

22

the negligent attorney rather than denying the innocent client recovery, unless the attorney proves his conduct was not a cause of the loss. The District Court recognized this rule in *Baptiste v. Rohn*, 2016 WL 1261072, at \*5 (D.V.I. Mar. 29, 2016), declining to apply it there only because the attorney's negligence had merely *hindered*, rather than *made impossible*, the plaintiff's proof, and because no *Banks* analysis had been presented. Both gaps are supplied here: Samuel Hall kept no accounting of the funds he received, refused Ethlyn's written demands to account, and retained the file and records after the representation ended—so that to whatever extent proof is genuinely unavailable, it is his own conduct, not the mere passage of time, that made it so. Under a *Banks* analysis the burden of disproving causation should fall on him, consistent with the majority rule and the policy of 5 V.I.C. § 740(6).

The Estate will prove the absence of Ethlyn's informed consent through Samuel Hall's admissions and the documents—not through any suggestion that Ethlyn lacked capacity. The Florida judgment's finding that she was competent is preclusive and favorable (Part III), and the Estate does not and need not argue otherwise.

## VII. DAMAGES

The Estate's damages are: (1) the diverted lease proceeds—$1,070,000, the full sum Samuel Hall collected on Ethlyn's behalf and diverted, recoverable through either the conversion claim (Part V.B) or the legal-malpractice claim (Part V.A) as a single recovery, plus the further sums Samuel Hall converted or wrongfully withholds—the $25,000 of tax-allocated funds he spent on Yassin's house and the $35,000 and

$69,408.85 he continues to hold and has never accounted for; (2) the tax, penalties, and interest caused by the malpractice—a separate and additional injury—which Kenneth Heverly quantified as of the 2015 trial and will extend forward to the retrial date; (3) equitable relief—an accounting, a constructive trust, and foreclosure of the equitable lien on Parcel 17-5; and (4) punitive damages, tethered to the surviving malpractice and conversion conduct (not the dropped fraud/unjust-enrichment counts).

## VIII. CONCLUSION

For the foregoing reasons, the evidence at retrial will establish Defendants' liability for legal malpractice and conversion, the tax-liability damages the Third Circuit reinstated, and the Estate's entitlement to an accounting, a constructive trust, and an equitable lien on Parcel 17-5. The Estate respectfully submits that the case be tried to verdict on those claims and the improper matters identified in the Estate's motion in limine be kept from the jury.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.**
Attorneys for Elsa Hall, as Personal Representative of the Estate of Ethlyn Louise Hall and as Successor Trustee of The Ethlyn Louise Hall Family Trust

Dated: July 17, 2026          By:        /s/ Andrew C. Simpson
                                         Andrew C. Simpson (VI Bar 451)
                                         2191 Church Street, Suite 5
                                         Christiansted, VI 00820
                                         (T) 340-719-3900